**AKERMAN, LLP**
EVELINA GENTRY (SBN 296796)
evelina.gentry@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 588-9500
Facsimile: (213) 627-6342

*Proposed Attorneys for FJC Management Inc.*
*Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA- OAKLAND DIVISION

| | |
|---|---|
| In re: | Case No. _____ |
| FJC MANAGEMENT INC., | Chapter 11 |
| Debtor and Debtor-in-Possession. | Subchapter V |
| | **DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS** |
| | <u>Hearing</u>:<br>Date: _____<br>Time:     10:00 a.m.<br>Courtroom: _____<br>_____<br>_____ |

I, Pravesh Chopra, declare:

1.     I am the Chief Executive Officer of FJC Management Inc., a California corporation (the "<u>Debtor</u>" or "<u>FJC</u>"). On January 25, 2023, Debtor commenced this bankruptcy case.

2.     I know of my own personal knowledge each of the facts set forth in this Declaration, except only those facts set forth on information and belief and, as to those facts, 1 am informed and believe them to be true. Where facts are stated upon information and belief, I know them to be true of my own personal knowledge or based upon my review of Debtor's books, records, files and procedures. If called upon to testify in this action as to the matters set forth herein, I could and would testify competently thereto.

1

3.      I started my career in the restaurant industry more than 30 years ago, as a kitchen manager. I worked relentlessly and learned as much as possible. My roles and responsibilities grew. I became general manager and, thereafter, regional manager. My experiences over the course of my career have afforded the opportunity to personally endure the joys and burdens in every facet of the restaurant industry.

4.      I now own a small number of restaurants, by means of my interest in Debtor.

5.      In 2017, I, along with my partner, Ishwinder Judge, formed FJC Management Inc., the Debtor in this case. Since formation as a California corporation, Mr. Judge and I were, and continue to be, its sole shareholders. FJC, in turn, owns Buffalo Wild Wings franchised restaurants.

6.      Debtor operates 4 fast casual restaurants known as "Buffalo Wild Wings" in California, under the Buffalo Wild Wings franchise. These four restaurants are located in Livermore, California, Dublin, California, Fairfield, California, and Vacaville, California. Debtor previously operated a restaurant in San Ramon, California. Debtor's principal business office is located at 2150 Portola Avenue, Livermore, California.

7.      In 2020, Debtor's business fell victim to the global COVID-19 pandemic. Debtor suffered significant revenue losses, supply chain disruptions and inflationary pressures. Debtor attempted a number of cost saving measures, including, but not limited to, the modification and renegotiation of lease terms for all its locations.

8.      The landlord for the San Ramon location, however, refused to provide any relief from the rent obligations during COVID-19 pandemic on a pre-petition basis. Rather, the landlord commenced litigation against Debtor in California state court. This has added significant financial strain to Debtor, especially as the San Ramon landlord obtained a pre-judgment attachment order.

9.      As a result of the store's reduced revenue and pressures from the San Ramon landlord, Debtor ceased its operation of the San Ramon location. The San Ramon location closed its doors over a year ago. Since, Debtor has engaged in expensive good faith negotiation efforts to settle rent arrears with the San Ramon landlord. Debtor has extended realistic and reasonable offers but the San Ramon landlord has refused to settle thereby necessitating the Debtor's bankruptcy filing.

**DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS**

10.     Debtor continues to face the results of COVID and its aftermath, with a reduced restaurant count, and continuing pressures form the San Ramon location and, thus, requires the protections afforded under Bankruptcy Code, Chapter 11, Subchapter V.

11.     Debtor filed the instant case to reorganize its debts and obligations so that, going forward, the Debtor may continue to operate as a going concern and preserve value for the Debtor's stakeholders, including all creditors and numerous employees.

12.     Certain of the Debtor's locations have remained open and, to a greater and lesser extent, profitable. Debtor believes it can successfully reorganize under Subchapter V, thereby preserving approximately 124 jobs.

13.     Debtor does not own any real estate. Debtor's assets generally consist of: equipment, restaurant supplies maintained in the four locations, and office equipment housed in the Livermore location.

14.     Generally, Debtor has approximately $97,418 in its general operating account, $108, 887 in third party receivables, and approximately $113, 627 in inventory. Debtor's largest financial obligations relate to the State Court Action commenced by the San Ramon landlord and general business expenses. In relevant part, Debtor's accounts payable consist of: $15,735.68, substantially all of which is within ordinary credit terms. Debtor's current sale and use tax liability amounts to: $182,668.00.

15.     Lastly, the U.S. Small Business Administration (the "SBA"), is Debtor's sole secured creditor, with claim of approximately amount of $500,000, secured by a blanket pledge of all Debtor's assets. The SBA loan has very attractive terms including a low rate of interest and a 30 year term.

### First Day Motions

16.     To further Debtor's restructuring efforts, Debtor has filed, contemporaneous with this Declaration, several "First Day" Motions[1]. Debtor respectfully requests that the Court consider entering the proposed orders granting the First Day Motions on an emergency basis.

---

[1] Contemporaneous with this Declaration Debtor filed two first day motions. The first motion seeks authority to use cash collateral, and, the second, use of its existing cash management systems. Debtor expects to file two additional motions; Debtor will request authority to: pay certain pre-petition sale and use taxes, and certain utilities.

3                                              CASE NO.: 23-
DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS

17.     I have reviewed the First Day Motions and the proposed orders (including the exhibits) and have determined that the facts set forth therein are true and correct to the best of my knowledge, information and belief. In addition, I believe that the relief sought in each of the First Day Motions (a) is vital to enable Debtor to make the transition to, and operate in, Subchapter V with minimal interruption or disruption to its business or loss of productivity or value, and (b) constitute a critical element of rejuvenating Debtor's operations, which is necessary to maximize value during the bankruptcy for the benefit of all stakeholders.

18.     <u>Cash Collateral</u>. Debtor is filing an Emergency Motion for (1) Authority to Use Cash Collateral on an Interim Basis (2) Granting Adequate Protection; (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b); and (iv) Granting Related Relief (the "Cash Collateral Motion"). I have read the Cash Collateral Motion and am informed and believe it is true and correct in every material respect.

19.     In the Cash Collateral Motion, the Debtor requests authority to use Cash Collateral through April 25, 2023 on the terms set forth in the Cash Collateral Motion.

20.     On or about August 26, 2021, in an effort to stabilize its business, Debtor obtained a EIDL loan from the SBA. Under the terms of the Loan Agreement, Debtor received a loan in the aggregate principal Loan Amount of $500,000, at an interest rate of 3.75% per annum. Debtor's monthly obligation of $2,501.00 commenced twenty-four (24) months from August 26, 2021. The balance of principal become payable thirty years from the date of the Loan Agreement. The SBA Loan is secured by a blanket pledge of all of Debtor's assets.

21.     Debtor requires Cash Collateral because it will preserve the value of Debtor's estate, to the benefit of all creditors, particularly because it is necessary that the Debtor demonstrate to its staff, vendors and customers that Debtor can continue to function without interruption and pay vendors in the ordinary course of business. Absent such a showing—and in the event of any interruption or delay in the business—the Debtor's customers will likely move their business to Debtor's competitors, and staff will likely pursue opportunities with competitors, which would cripple the Debtor's business.

22.     The SBA's perfected lien on the Cash Collateral, will be adequately protected with (i) a replacement lien against the Debtor's personal property assets and the proceeds thereof, to the same extent, priority and validity as the lien held as of the Petition Date, and subject to the same defenses and avoidance actions as those applicable to their respective liens as of the Petition Date, (ii) monthly payments in the amount of: $2,501.00, and (iii) reporting requirements, among other things.

23.     Attached hereto as **Exhibit A,** and incorporated herein by this reference is a true and correct copy of an interim budget (the "Budget") for the period from the Petition Date through April 25, 2023. I am informed and believe that the Budget is based upon reasonable assumptions and conditions.

24.     Attached hereto as **Exhibit B** is true and correct copy of the SBA Loan Agreement. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true to the best of my knowledge, information and belief.

25.     Cash Management. The Debtor is filing an Emergency Motion for Entry of an Order Authorizing (1) Maintenance of Existing Bank Accounts, (2) Continued Use of Existing Cash Management System, and (3) Continued Use of Business Forms (the "Cash Management Motion"). I have read the Cash Management Motion and am informed and believe that it is true and correct in every material respect.

26.     As set forth in the concurrently filed **Exhibit C**, the Debtor maintains Accounts with with Bank of America ("BoA") and Truist Bank ("Truist Bank"). Debtor holds four (4) BoA Accounts (the "BoA Accounts") and Six (6) Truist accounts ("Truist Accounts").

27.     In relevant part, joint operation of these accounts are critical for Debtor's business. In connection with the state law action, the San Ramon landlord garnished Debtor's BoA Accounts. In order to salvage its operation and the business, Debtor had no alternative but to also open accounts at Truist Bank. Accordingly, Debtor's current administrative procedures require use of both BoA and Truist Accounts.

28.     Currently, all of Debtor's transactions passthrough the BoA accounts, and are, thereafter, transferred to the Truist Accounts. Through BoA, Debtor managed its general operating

Case: 23-40085   Doc# 5   Filed: 01/25/23   Entered: 01/25/23 17:35:57   Page 5 of 38

**DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS**

1    banks have designated accounts for payroll processing funds are ultimately withdrawn from Debtor's

2    Truist account.

3            29.    Accordingly, Debtor request temporary approval to hold DIP accounts with both banks,

4    for no longer than 15 days, until Debtor is able to transfer all activity to the BoA accounts.

5

6    Dated this 25 day of January, 2023

7

8                                            By_____
                                                  Pravesh Chopra

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

68287945;4                                    6                                    CASE NO:

DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS
Case: 23-40085   Doc# 5   Filed: 01/25/23   Entered: 01/25/23 17:35:57   Page 6 of 38

**EXHIBIT A**

**BUDGET**

7

**DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS**

# 3 Month Projections

Show All: All Locations

| | Period 1 | Period 2 | Period 3 | TOTAL |
|---|---|---|---|---|
| **Sales** | | | | |
| **Sales** | | | | |
| Gross Sales | 511,346 | 516,386 | 510,088 | 1,537,820 |
| Beverages | 25,314 | 24,061 | 21,309 | 70,684 |
| Liquor | 43,001 | 46,436 | 47,364 | 136,800 |
| Beer | 88,811 | 95,215 | 110,250 | 294,276 |
| Wine | 1,987 | 1,516 | 1,294 | 4,797 |
| Retail | 1,231 | 1,201 | 987 | 3,419 |
| **3rd Party Sales** | | | | |
| 3rd Party Sales | 71,732 | 81,730 | 80,784 | 234,246 |
| 3rd Party Discounts and Commissions | -14,752 | -15,419 | -16,970 | -47,141 |
| Total 3rd Party Sales | 56,980 | 66,311 | 63,814 | 187,105 |
| Gift Cards Sold | 450 | 385 | 150 | 985 |
| Gift C Redeemed | 175 | 30 | | 205 |
| Misc Income: | | 4,986 | 64 | 5,050 |
| Total Sales | 729,295 | 756,527 | 755,319 | 2,241,140 |
| **Discounts** | | | | |
| Coupon | -2,453 | -2,845 | -3,098 | -8,395 |
| Employee Meals | -658 | -360 | -212 | -1,231 |
| Manager Meals | -1,966 | -1,391 | -1,698 | -5,055 |
| Discount | -10,694 | -10,607 | -11,623 | -32,924 |
| Walkouts | -453 | -970 | -1,493 | -2,916 |
| Comps | -7,438 | -7,081 | -7,852 | -22,371 |
| Total Discounts | -23,663 | -23,254 | -25,975 | -72,893 |
| **Total Sales** | **705,632** | **733,272** | **729,344** | 2,168,248 |
| **Cost of Sales** | | | | |
| **Food and Beverage Costs** | | | | |
| Food Purchases | 11,073 | 13,575 | 12,434 | 37,082 |
| Shortening | 4,163 | 4,832 | 6,363 | 15,358 |
| Cheese | 156 | 581 | | 737 |
| Desserts | 596 | 1,202 | 897 | 2,695 |
| Appetizers | 5,237 | 6,474 | 7,377 | 19,088 |
| Ground Beef | | 112 | | 112 |
| Wings Boneless | 16,032 | 19,447 | 21,438 | 56,917 |
| Wings Traditional | 68,702 | 68,473 | 54,191 | 191,367 |
| Sauce Bulk | 12,076 | 13,854 | 17,591 | 43,521 |
| Poultry | 4,445 | 6,439 | 7,043 | 17,927 |
| Boneless Wings | 4,299 | 10,347 | | 14,646 |
| Pork | 588 | 783 | 583 | 1,954 |
| Meats | 5,370 | 6,598 | 5,846 | 17,815 |
| French Fries | | 147 | | 147 |
| Bread & Rolls | | 526 | | 526 |
| Groceries & Frozen F | | | 138 | 138 |

Powered by Restaurant365                              1/18/2023 11:21:14 PM

| | | | | |
|---|---:|---:|---:|---:|
| Linen | 853 | 1,149 | 1,246 | 3,248 |
| n/a beverages | 4,725 | 5,258 | 6,253 | 16,236 |
| Soft Drinks | 852 | 159 | 1,782 | 2,792 |
| Alcohol | 8,298 | 4,444 | 4,399 | 17,141 |
| Bar Mixes | 2,275 | 2,885 | 2,748 | 7,908 |
| Supplies Bar | 20 | 65 | 124 | 208 |
| Beer Purchases | 24,834 | 35,076 | 43,140 | 103,050 |
| Liquor Purchases | | 7,555 | 2,233 | 9,788 |
| Purchase Discounts/F | 60 | 426 | 947 | 1,433 |
| Total Food and Beverage Costs | 174,656 | 210,407 | 196,772 | 581,835 |
| **Labor Cost** | | | | |
| Host / Hostess | 50,128 | 54,984 | 65,540 | 170,652 |
| Cooks | 54,699 | 56,208 | 68,883 | 179,791 |
| Servers | 39,629 | 54,412 | 37,472 | 131,513 |
| Bar Labor | 6,539 | 7,099 | 8,466 | 22,104 |
| Restaurant Managers | 37,469 | 33,699 | 26,791 | 97,959 |
| Payroll Taxes Mgmt | 22,771 | 19,648 | 21,719 | 64,138 |
| Health & Life | 1,225 | 3,117 | 772 | 5,114 |
| Payroll Tax Expense | | | | 0 |
| Worker's Comp Insura | | 2,495 | 5,466 | 7,961 |
| Recruitment and Trai | 445 | 445 | 615 | 1,505 |
| Payroll Processing F | 968 | | | 968 |
| Total Labor Cost | 213,874 | 232,106 | 235,725 | 681,704 |
| **Total Cost of Sales** | **388,530** | **442,512** | **432,497** | **1,263,539** |
| **GROSS PROFIT** | **317,102** | **290,760** | **296,847** | **904,709** |
| **Operating Expense** | | | | |
| **Utilities** | | | | |
| Electricity | 16,132 | 18,071 | 29,825 | 64,028 |
| Gas | 5,654 | 3,876 | 3,948 | 13,478 |
| Water and Sewer | 1,251 | 821 | | 2,072 |
| Trash | 3,289 | 5,160 | 16,361 | 24,811 |
| Telephone / Internet | 4,621 | 4,760 | 4,586 | 13,967 |
| TV Satellite | 3,376 | 2,976 | 7,685 | 14,037 |
| PPV - UFC | 5,000 | 2,600 | 4,550 | 12,150 |
| Total Utilities | 39,323 | 38,265 | 66,954 | 144,543 |
| **Non - Ingredient** | | | | |
| Janitorial | 2,191 | 3,275 | 2,981 | 8,447 |
| Supplies Kitchen | 2,662 | 2,907 | 3,262 | 8,830 |
| Small Wares | 2,185 | 3,932 | 5,728 | 11,845 |
| Paper Products | 8,514 | 8,762 | 9,309 | 26,584 |
| Total Non - Ingredient | 15,551 | 18,876 | 21,279 | 55,706 |
| **Repairs and Maintenance** | | | | |
| Landscaping | 546 | | | 546 |
| Repairs and Maintena | 439 | 859 | 2,461 | 3,758 |
| TV/Projector Repairs | | | | 0 |
| Interior Lighting | | | | 0 |
| Interior Plumbing | 578 | 272 | 808 | 1,658 |
| Repairs and Maintena - 1 | 4,291 | 475 | 2,239 | 7,006 |
| Refrigeration | 450 | 3,711 | 3,817 | 7,979 |
| HVAC | 450 | 1,604 | 1,268 | 3,322 |

Powered by Restaurant365    1/18/2023 11:21:14 PM

| | | | | |
|---|--:|--:|--:|--:|
| Ice Machine | | 467 | | 467 |
| POS SUPPORT | 1,273 | 4,853 | 810 | 6,936 |
| Recurring Maintenanc | 29 | | | 29 |
| Hood Cleaning | 1,425 | | | 1,425 |
| Grease Trap Service | 390 | | 1,820 | 2,210 |
| Steam Cleaning | | | | 0 |
| Pest Control | 213 | 405 | 2,408 | 3,026 |
| Fire & Safety | | | | 0 |
| Total Repairs and Maintenance | 10,084 | 12,647 | 15,631 | 38,362 |
| **Indirect Costs** | | | | |
| Local Advertising an | 2,090 | 3,067 | 1,320 | 6,477 |
| Uniforms/Laundry | 228 | 772 | 959 | 1,959 |
| Security | 491 | | 129 | 621 |
| TV/ Satelite Expense | | | | 0 |
| Equipment Rental | 1,360 | 2,721 | 608 | 4,689 |
| Credit Card Processi | 236 | 232 | 217 | 685 |
| Permits and Fees | 2,236 | 4,203 | 1,329 | 7,768 |
| Miscellaneous Expens | | | | 0 |
| Office Supplies | 2,820 | 784 | 339 | 3,943 |
| Postage | 39 | 116 | | 154 |
| Cash (over)/short | | | | |
| Total Indirect Costs | 5,129 | 2,728 | -3,409 | 4,447 |
| **Total Operating Expense** | **70,086** | **72,516** | **100,456** | **243,058** |
| **NET PRIOR TO GA** | **247,015** | **218,244** | **196,391** | **661,650** |
| **Non Operating Costs** | | | | |
| **Non-Operating Costs** | | | | |
| Rent | 83,767 | 64,434 | 59,661 | 207,863 |
| Common Area Maintena | 18,786 | 13,133 | 13,076 | 44,996 |
| Advertising - BWW | 26,780 | 28,040 | 27,219 | 82,039 |
| Royalty - BWW | 35,666 | 37,437 | 36,398 | 109,501 |
| Real/Personal Proper | 17,700 | 13,232 | 8,164 | 39,096 |
| Insurance/ Property/ | 9,018 | 11,437 | 9,241 | 29,696 |
| Total Non-Operating Costs | 191,719 | 167,713 | 153,760 | 513,192 |
| **Total Non Operating Costs** | **191,719** | **167,713** | **153,760** | **513,192** |
| **Corporate Overhead & Other** | | | | |
| **G&A** | | | | |
| Operations Managemen | 7,308 | 7,308 | 7,308 | 21,923 |
| Employee Benefits | 7,436 | 5,648 | 7,930 | 21,014 |
| Payroll Tax Expense - G&A | 3,080 | 2,673 | 2,108 | 7,861 |
| Recruitment and Trai - G&A | 313 | 3,353 | | 3,666 |
| Supplies | 15 | 15 | 224 | 254 |
| Outside Services | 307 | 307 | 307 | 920 |
| Uniforms | | | | |
| Legal | 8,500 | 8,500 | 8,500 | 25,500 |
| Accounting | 4,841 | 3,791 | 3,869 | 12,501 |
| Auto Expense | 6,414 | 6,073 | 4,839 | 17,327 |
| Bank Fee | 2500 | 2500 | 2,500 | 7,500 |
| Miscellaneous Expens G&A | 1,612 | 2,648 | 2,321 | 6,581 |
| Total G&A | 42,326 | 42,815 | 39,905 | 125,046 |
| **NET INCOME OF OPERATIONS** | **12,970** | **7,716** | **2,726** | **23,412** |

Powered by Restaurant365                    1/18/2023 11:21:14 PM

**EXHIBIT B**

**SBA LOAN AGREEMENT**

8

**DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS**

# AMENDED LOAN AUTHORIZATION AND AGREEMENT (LA&A)

### *A PROPERLY SIGNED DOCUMENT IS REQUIRED <u>PRIOR</u> TO ANY DISBURSEMENT*

---

**<u>CAREFULLY READ THE LA&A</u>:**

This document describes the terms and conditions of your loan. It is your responsibility to comply with <u>ALL</u> the terms and conditions of your loan.

---

**<u>SIGNING THE LA&A</u>:**

All borrowers must sign the LA&A.

- Sign your name *exactly* as it appears on the LA&A. If typed incorrectly, you should sign with the correct spelling.
- If your middle initial appears on the signature line, sign with your middle initial.
- If a suffix appears on the signature line, such as Sr. or Jr., sign with your suffix.
- Corporate Signatories: Authorized representatives should sign the signature page.

*<u>Your signature represents your agreement to comply
 with the terms and conditions of the loan.</u>*

SBA Loan #█████7809

Application #█████6356

## U.S. Small Business Administration

Economic Injury Disaster Loan

# AMENDED LOAN AUTHORIZATION AND AGREEMENT

Date: 06.03.2020, 08.26.2021 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan or Loan Modification (SBA Loan #7336367809) to FJC Management Inc (Borrower) of 2150 Portola Ave Livermore California 94551 in the amount of five hundred thousand and 00/100 Dollars ($500,000.00), upon the following conditions:

<u>PAYMENT</u>

- Installment payments, including principal and interest, of $2,501.00 <u>Monthly</u>, will begin <u>Twenty-four (24) months</u> from the date of the Original Note. The balance of principal and interest will be payable <u>Thirty (30) years</u> from the date of the Original Note.

<u>INTEREST</u>

- Interest will accrue at the rate of <u>3.75</u>% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

<u>PAYMENT TERMS</u>

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

<u>COLLATERAL</u>

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

- For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

<u>GUARANTEE</u>

Borrower will provide the following guarantee(s):

- Guarantee on SBA Form 2128 of: Pravesh Chopra (2120 Canosa Court, Pleasanton, CA), Ishwinder Judge (1393 Via Di Salerno, Pleasanton, CA)

## REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

## USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and for loans of more than $25,000 to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

## REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

## DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement**. By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

## COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

## DUTY TO MAINTAIN HAZARD INSURANCE

- For loan amounts of greater than $25,000, within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## BOOKS AND RECORDS

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

## LIMITS ON DISTRIBUTION OF ASSETS

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

## EQUAL OPPORTUNITY REQUIREMENT

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

## DISCLOSURE OF LOBBYING ACTIVITIES

- Borrower agrees to the attached Certification Regarding Lobbying Activities

## BORROWER'S CERTIFICATIONS

Borrower certifies that:

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

- All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application.
  All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include  any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include

charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

## CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

## DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

RESOLUTION OF BOARD OF DIRECTORS

- Borrower and any business entity guarantor shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

*James E. Rivera*

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA. **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

**FJC Management Inc**

Date: 08.26.2021

Ishwinder Judge, Owner/Officer

DocuSigned by:

*Pravesh Chopra*

5C193C30977C451...

Date: 08.26.2021

Pravesh Chopra, Owner/Officer

Note: Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

# CERTIFICATION REGARDING LOBBYING

For loans over $150,000, Congress requires recipients to agree to the following:

1. Appropriated funds may NOT be used for lobbying.

2. Payment of non-federal funds for lobbying must be reported on Form SF-LLL.

3. Language of this certification must be incorporated into all contracts and subcontracts exceeding $100,000.

4. All contractors and subcontractors with contracts exceeding $100,000 are required to certify and disclose accordingly.

SBA Form 1391 (5-00)

# CERTIFICATION REGARDING
# LOBBYING

*Certification for Contracts, Grants, Loans, and Cooperative
Agreements*

Borrower and all Guarantors certify, to the best of its, his or her knowledge and belief, that:

(1)    No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2)    If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal loan, the undersigned shall complete and submit Standard Form LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3)    The undersigned shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants, and contracts under grants, loans, and co-operative agreements) and that all sub-recipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000.00 and not more than $100,000.00 for each such failure.

SBA Form 1391 (5-00)



This Statement of Policy is Posted

In Accordance with Regulations of the

# Small Business Administration

This Organization Practices

## Equal Employment Opportunity

**We do not discriminate on the ground of race, color, religion, sex, age, disability or national origin in the hiring, retention, or promotion of employees; nor in determining their rank, or the compensation or fringe benefits paid them.**

This Organization Practices

## Equal Treatment of Clients

**We do not discriminate on the basis of race, color, religion, sex, marital status, disability, age or national origin in services or accommodations offered or provided to our employees, clients or guests.**

**These policies and this notice comply with regulations of the United States Government.**

**Please report violations of this policy to:**

**Administrator
Small Business Administration
Washington, D.C. 20416**

  In order for the public and your employees to know their rights under 13 C.F.R Parts 112, 113, and 117, Small Business Administration Regulations, and to conform with the directions of the Administrator of SBA, this poster must be displayed where it is clearly visible to employees, applicants for employment, and the public.

  Failure to display the poster as required in accordance with SBA Regulations may be considered evidence of noncompliance and subject you to the penalties contained in those Regulations.

Page 10 of 11

This form was electronically produced by Elite Federal Inc.

Case 23-40085   Doc 6   Filed: 01/25/23   Entered: 01/25/23 17:35:57   Page 21 of 38

Federal Recycling Program          Printed on Recycled Paper

DocuSign Envelope ID: 510AF6D7-1328-42E8-B3B7-F98B1B61B14D

Doc # ████████34-01



**Esta Declaración De Principios Se Publica**

**De Acuerdo Con Los Reglamentos De La**

Agencia Federal Para el Desarrollo de la Pequeña Empresa

**Esta Organización Practica**

# Igual Oportunidad De Empleo

**No discriminamos por razón de raza, color, religión, sexo, edad, discapacidad o nacionalidad en el empleo, retención o ascenso de personal ni en la determinación de sus posiciones, salarios o beneficios marginales.**

**Esta Organización Practica**

# Igualdad En El Trato A Su Clientela

**No discriminamos por razón de raza, color, religión, sexo, estado civil, edad, discapacidad o nacionalidad en los servicios o facilidades provistos para nuestros empleados, clientes o visitantes.**

**Estos principios y este aviso cumplen con los reglamentos del Gobierno de los Estados Unidos de América.**

**Favor de informar violaciones a lo aquí indicado a:**

**Administrador
Agencia Federal Para el Desarrollo de la
Pequeña Empresa
Washington, D.C. 20416**

**A fin de que el público y sus empleados conozcan sus derechos según lo expresado en las Secciones 112, 113 y 117 del Código de Regulaciaones Federales No. 13, de los Reglamentos de la Agencia Federal Para el Desarrollo de la Pequeña Empresa y de acuerdo con las instrucciones del Administrador de dicha agencia,
esta notificación debe fijarse en un lugar claramente visible para los empleados, solicitantes de empleo y público en general. No fijar esta notificación según lo requerido por los reglamentos de la Agencia Federal Para el Desarrollo de la Pequeña Empresa, puede ser interpretado como evidencia de falta de cumplimiento de los mismos y conllevará la ejecución de los castigos impuestos en estos reglamentos.**

SBA FORM 722 (10-02) REF: SOP 9030    PREVIOUS EDITIONS ARE OBSOLETE    **U.S. GOVERNMENT PRINTING OFFICE: 1994 0- 153-346**

This form was electronically produced by Elite Federal Inc.

Case 23-40085 Doc 6 Filed: 01/25/23   Entered: 01/25/23 17:35:57    Page 22 of 38

Federal Recycling Program    Printed on Recycled Paper

# MODIFICATION OF NOTE

**Read this document carefully.**  This is your written promise to repay the loan. This Modification of Note reflects the changes to your loan.

**Loan payments** will be due as stated in the second paragraph.

This document is pre-dated.  **DO NOT CHANGE THE DATE OF THIS DOCUMENT.**

**Sign** your name(s) EXACTLY as it appears. If there is an error in the spelling of your name, please notify this office. Sign on the back or bottom only, as indicated by the signature line.

**Return** the signed original document to SBA.

**Make no corrections** to this document.  Call the SBA office if you find an error.



| U.S. Small Business Administration | **Date: August 26, 2021** |
| **1st Modification of Note** | **Loan Amount: $500,000.00** |
| (SECURED DISASTER LOANS) | **Annual Interest Rate: 3.750%** |

**Application #**██████**6356**          **Loan #7336367809**

1. **NOTE:** The "Note" is the SBA note signed by Borrower, dated **June 3, 2020** in the amount of **one hundred and fifty thousand and 00/100 Dollars**, payable to SBA. This 1st Modification of Note modifies certain terms of the Note. The current modifications and any prior modifications to the Note, are disclosed below in Paragraphs 2 and 4.

2. **CURRENT PAYMENT TERMS:** Including terms modified by this agreement, the current payment terms of the 1st Modified Note are: The loan amount is **five hundred thousand.** The interest rate is **3.750%** per year. Payments of **$2,501.00** are due every **MONTH** beginning **Twenty-four (24)** months from the date of the Original Note. All remaining principal and accrued interest is due and payable Thirty (30) years from the date of Original Note.

3. **ADDITIONAL BORROWER: N/A**

4. **PREVIOUS NOTE AND MODIFICATIONS, IF ANY, AND CURRENT MODIFICATION TERMS SUMMARY:** The chart attached hereto and incorporated by reference as Addendum A is a summary of your original Note terms, any previous modifications thereto and this current modification:

5. **EFFECT OF THIS MODIFICATION:** All terms of the Note remain unchanged by this agreement except terms that are expressly modified. This Modification of Note becomes a part of the original Note and has the same effect as if its terms were in the original Note when it was signed.

6. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of the Note. **C)** "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

7. **DEFAULT:** Borrower is in default under the Note or any modification to the Note, if Borrower does not make a payment when due under the Note, or if Borrower: **A)** Fails to comply with any provision of the Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay the Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay the Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay the Note.

SBA FORM 2131 (5-00)

███████████7809

8.  **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under the Note; **B)** Collect all amounts owing from any Borrower or Guarantor; **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or, **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

9.  **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Incur expenses to collect amounts due under the Note, enforce the terms of the Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay the Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on the Note.

10. **WHEN FEDERAL LAW APPLIES:** When SBA is the holder, the Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to the Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

11. **GENERAL PROVISIONS: A)** All individuals and entities signing the Note, including this Modification, are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of the Note. **F)** If any part of the Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with the Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer the Note.

12. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one half times the proceeds disbursed, in addition to other remedies allowed by law.

13. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

### FJC Management Inc

---

Ishwinder Judge, Owner/Officer

DocuSigned by:

*Pravesh Chopra*

5C193C30977C451...

---

Pravesh Chopra, Owner/Officer

SBA FORM 2131 (5-00)


# Addendum A

| | Date | Note Amount | Interest Rate | Periodic Payment Amounts | Maturity Date |
|---|---|---|---|---|---|
| Original Note | April 16, 2020 | $150,000.00 | 3.750% | $731.00 | June 3, 2050 |
| 1st Modification | August 2, 2021 | $500,000.00 | 3.750% | $2,501.00 | June 3, 2050 |

In Process

Case: 23-40085   Doc# 5   Filed: 01/25/23   Entered: 01/25/23 17:35:57   Page 26 of 38

# AMENDED SECURITY AGREEMENT

<u>Read this document carefully.</u> It grants the SBA a security interest (lien) in all the property described in paragraph 4.

This document is predated. DO NOT CHANGE THE DATE ON THIS DOCUMENT.

In Process



## U.S. Small Business Administration
# AMENDED SECURITY AGREEMENT

| | |
|---|---|
| SBA Loan #: | ██████7809 |
| Borrower: | FJC Management Inc |
| Secured Party: | **The Small Business Administration, an Agency of the U.S. Government** |
| Date: | 08.26.2021 |
| Note Amount: | $500,000.00 |

1.  **DEFINITIONS.**

    Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2.  **GRANT OF SECURITY INTEREST.**

    For value received, the Borrower grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3.  **OBLIGATIONS SECURED**.

    This Agreement secures the payment and performance of: (a) all obligations under a Note dated 06.03.2020 and all amendments and modifications thereto, made by FJC Management Inc , made payable to Secured Lender, in the total principal amount of $500,000.00 ("Note"), including all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Borrower in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations.

4.  **COLLATERAL DESCRIPTION.**

    The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible

SBA Form 1059 (09-19) Previous Editions are obsolete.

and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

5. **RESTRICTIONS ON COLLATERAL TRANSFER.**

Borrower will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Borrower's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Borrower may sell inventory in the ordinary course of business on customary terms. Borrower may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6. **MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.**

Borrower must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Borrower hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Borrower must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Borrower hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Borrower's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7. **CHANGES TO BORROWER'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.**

Borrower must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Borrower will pay for the preparation and filing of all documents Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8. **PERFECTION OF SECURITY INTEREST.**

Borrower consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Borrower must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Borrower will pay the filing and recording costs of any documents relating to Secured Party's security interest. Borrower ratifies all previous filings and recordings, including financing statements and

SBA Form 1059 (09-19) Previous Editions are obsolete.

notations on certificates of title. Borrower will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9.    **DEFAULT.**

Borrower is in default under this Agreement if: (a) Borrower fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Borrower makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Borrower must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Borrower or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Borrower waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10.    **FEDERAL RIGHTS.**

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Borrower may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

11.    **GOVERNING LAW.**

Unless SBA is the holder of the Note, in which case federal law will govern, Borrower and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Borrower is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12.    **SECURED PARTY RIGHTS.**

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13.    **SEVERABILITY.**

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

SBA Form 1059 (09-19) Previous Editions are obsolete.

14. **BORROWER CERTIFICATIONS.**

Borrower certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Borrower's name and not in the name of any other organization or individual; (c) Borrower has the legal authority to grant the security interest in the Collateral; (d) Borrower's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; (g) Borrower has read and understands the meaning and effect of all terms of this Agreement.

15. **BORROWER NAME(S) AND SIGNATURE(S).**

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Borrower under this Agreement.

**FJC Management Inc**

Date: 08.26.2021

Ishwinder Judge, Owner/Officer

DocuSigned by:

*Pravesh Chopra*

5C193C30977C451...

Date: 08.26.2021

Pravesh Chopra, Owner/Officer

SBA Form 1059 (09-19) Previous Editions are obsolete.

# <u>GUARANTEE</u>

**<u>The Guarantee</u>** is to be signed by the person(s) who is to guarantee your loan.

This document is pre-dated. DO NOT CHANGE THE DATE ON THIS DOCUMENT.

In Process



## U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE
## (DISASTER LOANS)

| | |
|---|---|
| SBA Loan # | ████7809 |
| Application # | ████6356 |
| Guarantor(s) | Ishwinder Judge, Pravesh Chopra |
| Borrower | FJC Management Inc |
| Date | 08.26.2021 |
| Note Amount | $500,000.00 |

1. **GUARANTEE.**

   Guarantor(s) unconditionally guarantee(s) payment to SBA of all amounts owing under the Note and any modifications of the Note. This Guarantee remains in effect until the Note and any modifications of the Note is paid in full. Guarantor(s) must pay all amounts due under the Note and any modifications of the Note when SBA makes written demand upon Guarantor(s). SBA is not required to seek payment from any other source before demanding payment from Guarantor(s).

2. **NOTE.**

   The "Note" is the promissory note dated 06.03.2020 and any modifications thereto in the total principal amount of **five hundred thousand  and 00/100 Dollars ($500,000.00,**) from Borrower to SBA. It includes any assumption, renewal, substitution, modifications or replacement of the Note.

3. **DEFINITIONS.**

   "Collateral" means property, if any, taken as security for payment of the Note and any modifications of the Note or any guarantee of the Note.
   "Loan" means the loan evidenced by the Note and any modifications of the Note.
   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor(s) or any other guarantor, or anyone who pledges Collateral.
   "SBA" means the Small Business Administration, an Agency of the United States of America.

Page 2 of 5

4. **SBA'S GENERAL POWERS.**

SBA may take any of the following actions at any time, without notice, without Guarantor(s)' consent, and without making demand upon Guarantor(s):

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note and any modifications of the Note;

B.   Refrain from taking any action on the Note and any modifications of the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note and any modifications of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note and any modifications of the Note;

E.   Substitute or release any of the Collateral, whether or not SBA receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H.   Exercise any rights it has, including those in the Note and any modifications of the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor(s) or create any rights or claims against SBA.

5. **FEDERAL LAW.**

When SBA is the holder, the Note and any modifications of the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor(s) may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR(S) WAIVE(S).**

To the extent permitted by law,

I.   Guarantor(s) waive(s) all rights to:

1)   Require presentment, protest, or demand upon Borrower;

2)   Redeem any Collateral before or after SBA disposes of it;

3)   Have any disposition of Collateral advertised; and

4)   Require a valuation of Collateral before or after SBA disposes of it.

J.   Guarantor(s) waive(s) any notice of:

1)   Any default under the Note and/or any modifications of the Note;

2)   Presentment, dishonor, protest, or demand;

3)   Execution of the Note and/or any modifications of the Note;

4)   Any action or inaction on the Note and/or any modifications of the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5)   Any change in the financial condition or business operations of Borrower or any guarantor(s);

6)   Any changes in the terms of the Note and/or any modifications of the Note or other Loan Documents, except increases in the amounts due under the Note and/or any modifications of the Note; and

7)   The time or place of any sale or other disposition of Collateral.

K.   Guarantor(s) waive(s) defenses based upon any claim that

1)   SBA failed to obtain any guarantee;

2)   SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3)   SBA or others improperly valued or inspected the Collateral;

4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

SBA FORM 2128

5) SBA impaired the Collateral;
6) SBA did not dispose of any of the Collateral;
7) SBA did not conduct a commercially reasonable sale;
8) SBA did not obtain the fair market value of the Collateral;
9) SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) SBA made errors or omissions in Loan Documents or administration of the Loan;
12) SBA did not seek payment from the Borrower, any other guarantor(s), or any Collateral before demanding payment from Guarantor(s);
13) SBA impaired Guarantor(s)' suretyship rights;
14) SBA modified the Note terms, other than to increase amounts due under the Note and/or any modifications of the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor(s)' consent, Guarantor(s) will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note and/or any modifications of the Note; or
16) SBA has taken an action allowed under the Note and/or any modifications of the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL.**

Guarantor(s) will preserve the Collateral, if any, pledged by Guarantor(s) to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS.**

Under this Guarantee, Guarantor(s) include(s) successors, and SBA includes successors and assigns.

9. **GENERAL PROVISIONS.**

L. ENFORCEMENT EXPENSES. Guarantor(s) promise(s) to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

M. SUBROGRATION RIGHT. Guarantor(s) has/have no subrogation rights as to the Note or the Collateral until the Note or any modifications of the Note is/are paid in full.

N. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor(s) is/are jointly and severally liable.

O. DOCUMENT SIGNING. Guarantor(s) must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

P. FINANCIAL STATEMENTS. Guarantor(s) must give SBA financial statements as SBA requires.

Q. SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

R. ORAL STATEMENTS NOT BINDING. Guarantor(s) may not use an oral statement to contradict or alter the written terms of the Note and/or any modifications of the Note or this Guarantee, or to raise a defense to this Guarantee.

S. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

SBA FORM 2128

T.   CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10.   **GUARANTOR(S) ACKNOWLEDGMENT OF TERMS.**

Guarantor(s) acknowledge(s) that Guarantor(s) has/have read and understands the significance of all terms of the Loan Authorization Agreement, Note and/or any modifications of the Note, this Guarantee, including all waivers, and certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

11.   **GUARANTOR(S) NAME(S) AND SIGNATURE(S).**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

_____

Ishwinder Judge, individually

GUARANTOR:

DocuSigned by:

*Pravesh Chopra*

└─5C193C30977C451...

_____

Pravesh Chopra, individually

Page 5 of 5

**EXHIBIT C**

**LIST OF BANK ACCOUNTS**

9

**DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS**

In re: FJC Management, Inc.
Case No. 23-

**EXHIBIT C**

| **BANK NAME** | **DESCRIPTION** | **ACCOUNT NUMBER** (last 4 digits) |
|---|---|---|
| Bank of America | Checking account — Used for general operating expenses | 9228 |
| Bank of America | Payroll account | 9862 |
| Bank of America | Home office account — Used for split items, reimbursements and office utilities | 9150 |
| Bank of America | Checking account — Used for general operating expenses (Santa Barbara) | 4539 |
| Truist Bank | Credit Card Processing Account | 1121 |
| Truist Bank | Dublin/Fairfield | 8601 |
| Truist Bank | Vacaville | 8628 |
| Truist Bank | Livermore | 8636 |
| Truist Bank | Main | 8563 |
| Truist Bank | Payroll | 8571 |