**AKERMAN, LLP**
EVELINA GENTRY (SBN 296796)
evelina.gentry@akerman.com
601 W. Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

MARK S. LICHTENSTEIN
(*Admitted pro hac vice* )
mark.lichtenstein@akerman.com
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965

*Proposed Attorneys for FJC Management Inc.*
*Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA- OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>FJC MANAGEMENT INC.,<br><br>    Debtor and Debtor-in-Possession. | Case No. 23-40085(WJL)<br><br>Chapter 11<br><br>Subchapter V<br><br>**SECOND AMENDED DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF AMENDED "FIRST DAY" MOTIONS, WAGE MOTION, GIFT CARD MOTION AND INSURANCE MOTION**<br><br>Judge: Hon. William J. Lafferty<br>Requested Date: February 15, 2023<br>Requested Time: 10:30 a.m. (PT)<br>Courtroom : Videoconference Hearing<br>  via Zoom Only |

I, Pravesh Chopra, declare:

I am the Designated Responsible Person and Chief Executive Officer of FJC Management Inc.,

Case: 23-40085   Doc# 51   Filed: 02/14/23   Entered: 02/14/23 12:25:17   Page 1 of 8

AMENDED DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS

68287945;8

the debtor and debtor-in-possession (the "**Debtor**" or "**FJC**")[1].

1. On January 25, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has elected to proceed under subchapter V of chapter 11. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. I know of my own personal knowledge each of the facts set forth in this second amended declaration (the "**Second Amended Declaration**"), except only those facts set forth on information and belief and, as to those facts, 1 am informed and believe them to be true. Where facts are stated upon information and belief, I know them to be true of my own personal knowledge or based upon my review of Debtor's books, records, files and procedures. If called upon to testify in this action as to the matters set forth herein, I could and would testify competently thereto.

3. I submit this Second Amended Declaration in support of the (a) *Debtor's Emergency Motion For Interim Order Authorizing Debtor To Honor Certain Prepetition Obligations To Customers* [Docket No. 37] (the "**Gift Card Motion**"); (b) *Debtor's Emergency Motion for Interim Order Authorizing the Debtor to (i) Maintain Existing Insurance Policies and Pay all Policy Premiums and Brokers' Fees Arising thereunder and (ii) Continue Insurance Premium Financing Programs and Pay Insurance Premium* [Docket No. 38] (the "**Insurance Motion**"); (c) *Emergency Motion for Entry of an Interm Order Authorizing the Debtor to Honor or Pay Vacation, Leave and Other Reimbursable Expenses* [Docket No. 41] (the "**Wage Motion**") and (d) *D0ebtor's Amended Emergency First Day Motion for Interim Order Determining Adequate Assurance of Payment for Utility Services* [Docket No. 42] (the "**Amended Utilities Motion**")

---

[1] Additional information regarding my background and qualifications can be found in the *Declaration of Pravesh Chopra in Support of "First Day" Motions* [Docket No. 5] (the "**First Day Declaration**") and Amended Declaration of Pravesh Chopra in Support of "First Day" Motions [Docket No. 17] (the "**Amended First Day Declaration**"), which are fully incorporated by reference herein. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration and the Amended First Day Declaration.

Case: 23-40085    Doc#: 51    Filed: 02/14/23    Entered: 02/14/23 12:25:17    Page 2 of 8

## AMENDED FIRST DAY MOTIONS AND ADDITIONAL MOTIONS

4.      To further Debtor's restructuring efforts, Debtor has filed, contemporaneous with my First Day Declaration, several "First Day" Motions[2].  On January 27, 2023, the Debtor filed the *Debtor's Emergency First Day Motion for Order Determining Adequate Assurance of Payment for Utility Services* (the "**Utilities Motion**") [Docket No. 16].   Contempraneously therewith, I submitted the Amended First Day Declaration in support of such motion.

5.      I have reviewed the Gift Card Motion, the Insurance Motion, the Wage Motion and the Amended Utilities Motion and the proposed orders (including the exhibits) and have determined that the facts set forth therein are true and correct to the best of my knowledge, information and belief. In addition, I believe that the relief sought in each of the Motions  (a) is vital to enable Debtor to make the transition to, and operate in, Subchapter V with minimal interruption or disruption to its business or loss of productivity or value, and (b) constitute a critical element of rejuvenating Debtor's operations, which is necessary to maximize value during the bankruptcy for the benefit of all stakeholders.

6.      <u>Gift Card Motion</u>. The Debtor has filed the Gift Card Motion for entry of an order, *inter alia*, for the Debtor to (a) honor and perform, in its sole discretion, certain prepetition obligations related to the issuance of gift cards (the "Gift Cards") in the ordinary course of its business, (b) continue, renew, replace, implement or terminate such Gift Cards in the ordinary course of business, without further order of the Court.  In relevant part, the  Debtor sells Gift Cards to customers at its locations that can be used at any Buffalo Wild Wings restaurant in the nation. Additionally, all other Buffalo Wild Wings franchisees also sell Gift Cards to customers at franchised locations. Finally,

---

[2] Contemporaneous with this First Day Declaration, the Debtor filed two (2) first day motions. The first motion sought authority to use cash collateral (the "**Cash Collateral Motion**") [Docket No. 3] and, the second motion sought the use of its existing cash management systems (the "**Cash Management Motion**") [Docket No. 4].

AMENDED DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF  FIRST DAY  MOTIONS

682879945;8

Buffalo Wild Wings, as franchisor (the "BWW Franchisor"), sells Gift Cards through the internet and at retail establishments like Target. As explained below, the Gift Cards both sold by the Debtor and redeemed by the Debtor are entirely revenue neutral. The Debtor retains no customer information related to any Gift Cards. The Franchisor loads and processes the customer Gift Cards and retains the customer information tied to the issued Gift Cards. When a customer purchases a Gift Card at a Debtor location, the Debtor immediately transfers the funds to the Franchisor. When a customer uses a Gift Card, wherever purchased, at a Debtor location, the Debtor deducts the value of that redeemed Gift Card from its Franchise Fee obligation to the Franchisor. Under the Gift Card Program, the Debtor has no obligation with respect to Gift Cards other than to honor them at open Debtor locations. Any obligation to customers on behalf of unredeemed Gift Cards is exclusively borne by the Franchisor.

7. _Insurance Motion_. The Debtor ahs filed the Insurance Motion for entry of an order requesting authority to (a) maintain the Debtor's existing insurance policies, (b) pay all insurance obligations arising thereunder or in connection therewith, and to renew existing insurance policies, or enter into new insurance arrangements, as may be required as the annual terms of existing arrangements expire, and (c) continue insurance premium financing programs and pay insurance premium financing obligations arising thereunder or in connection therewith. In the ordinary course of business, the Debtor maintains various Insurance Policies. The Insurance Policies include coverage for, among others, workers' compensation claims, commercial automobile claims, fiduciary liability claims, claims for losses due to crime, accident claims, certain general and excess liability claims, employers' liability, and various property-related liabilities. The third-party claims that are covered by the Insurance Policies are neither unusual in amount nor in number in relation to the extent of the business operations conducted by the Debtor. The Debtor maintains the Insurance Policies through several different insurance carriers (collectively, the "**Insurance Carriers**"). The names of the Insurance Policies, the Insurance Carriers, the term of the current policy, and the Insurance Policies'

AMENDED DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS

Case: 23-40085   Doc#: 51   Filed: 02/14/23   Entered: 02/14/23 12:25:17   Page 4 of 8
6828794598

annual premiums are set forth on Exhibit B to the Insurance Motion. To the extent that any Insurance Policy premiums may be attributed to prepetition insurance coverage, the Debtor believes that payment of such Insurance Policy premiums is necessary to ensure continued coverage under such Insurance Policies and to maintain good relationships with the Debtor's insurers. Similarly, the Debtor believes that continued payment of Insurance Policy premiums as such premiums come due in the ordinary course of the Debtor's businesses is necessary. The Debtor's maintenance of their relationships with their insurers is critical to ensuring the continued availability of insurance coverage and reasonable pricing of such coverage.

8.    The Debtor has been represented in their negotiations with the various Insurance Carriers by Socius Insurance Services, Inc. (the "**Insurance Broker**"). The employment of the Insurance Broker has allowed the Debtor to obtain the insurance coverage necessary to operate their businesses in a reasonable and prudent manner, and to realize considerable savings in the procurement of such policies. The Debtor believes that it is in the best interests of its creditors and the Debtor's estate to continue their business relationships with the Insurance Broker. Accordingly, the Debtor seeks the entry of an order authorizing them to continue their prepetition practice of paying fees to the Insurance Broker in connection with their representation of the Debtor in various ongoing negotiations with the Debtor's Insurance Carriers, especially in light of the need to renew certain coverage for Debtor's property, commercial, and general, and umbrella policy, which Debtor operate under one global policy, with United Fire & Casualty Company (the "**Global Policy**"). In relation to this renewal, Debtor anticipates it will need make a down payment of $5,000 in the next week or so. This down payment is generally in line with Debtor's previous policy. Debtor does not foresee a substantial increase in costs for this policy.

9.    The Debtor finances the payment of premiums on all of its Insurance Policies. The Debtor makes such payments to the Insurance Broker, who then remits payment to the appropriate

Case: 23-40085   Doc# 51   Filed: 02/14/23   Entered: 02/14/23 12:25:17   Page 5 of 8
AMENDED DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS
6828779945;8

Insurance Carrier. The financing arrangements provide that the Debtor is to make ten (10) or twelve (12) monthly payments depending on the policy. Each payment is due on the first day of the month. In relevant part, Debtor's monthly obligation consist of: $2,754.86 under the Global Policy, $5,010.00 under Employment Policy, and approximately $3,000, under the workers compensation policy. The Debtor is current on all insurance financing obligations. The Debtor requests authority to continue their insurance finance programs, and to continue making installment payments in the ordinary course.

10.     Wage Motion:  The Debtor has filed the Wage Motion for entry of an interim order to honor or pay vacation, leave and other reimbursable expenses.   In relevant part, as reflected in the Wage Motion, as of the Petition Date, the Debtor employed 124 employees. Each full-time employee receives 3 days of paid sick leave annually. Additionally, each full-time employee receives two (2) weeks paid time off. At the end of an employee's career, they receive all unused paid time off. The Debtor approximates that the accrued vacation and PTO is in the amount of $13, 384.61.[3]

11.     Additionally, Debtor offers traditional health benefit plans to employees through third-party insurers, such as medical, dental and vision.  In relevant part, Debtor owes California Choice Benefit Administrators, Debtor's third party medical plan insurer administrator,  a total of $10,199.02. Debtor's approximate Post-petition arrears amount to $9,241.80, for services rendered in relation to Debtor's benefit plan. Additionally, Debtor owes $957.22, for pre-petition services, which is due and owing immediately.   Debtor deducts the employee portion of the insurance premium from the employees' paychecks and accrues such amounts on a monthly basis, along with the employer portion of the monthly insurance premium. Debtor also makes certain standard contributions to these benefit plans for the benefit of its employees.

---

[3] Balance as of Feb. 1, 2023, consisting of pre-petition and post-petition accrued vacation and PTO.

Case: 23-40085   Doc#: 51   Filed: 02/14/23   Entered: 02/14/23 12:25:17   Page 6 of 8

AMENDED DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF "FIRST DAY" MOTIONS

682879458

12.     <u>Amended Utilities Motion</u>: At the hearing held on January 31, 2023 on the Utilities Motion, the Court entered an *Interim Order on Debtor's Emergency First Day Motion for Order Determining Adequate Assurance of Payment for Utility Services* [Docket No. 36], which granted the Utilities Motion on an intereim basis, and since the Utilities Motion did not include all of the Debtor's utilities, the Debtor was directed to  confer with the Utilities referenced in the Motion and all of its other Utilities in advance of the filing of an amended Motion which will address the proposed treatment of all of the Debtor's Utilities.  The Debtor has filed  the Amended Utilities Motion to include all of the utilities providers for the Debtor's Locations, which obtain electricity, natural gas, water, sewer, trash service, phone and/or internet service from local utility providers. The Amended Utilities Motion seeks the authority, on an interim basis, to make certain payments to public utilities that provide utility services to various leased restaurant locations operated by the Debtor of a deposit (as reflected on Exhibit A to the Utilities Motion) in an amount equal to the estimated fourteen (14) day usage based on the total amount invoiced by the utilities on the most recent bill for each utility service, as assurance of payment under Bankruptcy Code section 366; and otherwise prohibits the utilities from altering, refusing, or discontinuing post-petition utility services to the Debtor without further order of this Court. Debtor also seeks authority, but not direction, to pay arrears in certain utility accounts.

AMENDED DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF  FIRST DAY  MOTIONS

Case: 23-40085   Doc# 51   Filed: 02/14/23   Entered: 02/14/23 12:25:17   Page 7 of 8
682879945;8

Dated this __ day of February, 2023.

By: _____
    Pravesh Chopra