1   **AKERMAN, LLP**
    EVELINA GENTRY (SBN 296796)
2   evelina.gentry@akerman.com
3   601 W. Fifth Street, Suite 300
    Los Angeles, California 90071
4   Telephone: (213) 688-9500
    Facsimile: (213) 627-6342
5
    MARK S. LICHTENSTEIN
6   (*Admitted Pro Hac Vice* )
    mark.lichtenstein@akerman.com
7   1251 Avenue of the Americas, 37th Floor
    New York, New York 10020
8   Telephone: (212) 880-3800
    Facsimile: (212) 880-8965
9   *Attorneys for FJC Management Inc.*
    *Debtor and Debtor-in-Possession*
10

11

12              **UNITED STATES BANKRUPTCY COURT**
13     **NORTHERN DISTRICT OF CALIFORNIA- OAKLAND DIVISION**

14  In re:                          | Case No. 23-40085(WJL)

15  FJC MANAGEMENT INC.,            | Chapter 11

16      Debtor and Debtor-in-Possession. | Subchapter V

17                                  | **MEMORANDUM OF POINTS AND**
18                                  | **AUTHORITIES IN SUPPORT OF**
                                    | **DEBTOR'S PLAN OF**
                                    | **REORGANIZATION FOR SMALL**
19                                  | **BUSINESS UNDER CHAPTER 11**
                                    | **DATED APRIL 25, 2023**
20

21                                  | Judge: Hon. William J. Lafferty
22                                  | Date: May 31, 2023
                                    | Time: 10:30 a.m. (Pacific Time)
23                                  | Location: U.S. Bankruptcy Court
                                    | Courtroom 220, 1300 Clay Street, 2nd Floor,
24                                  | Oakland, CA 94612
25

26

27

28
                                                1          CASE NO. 23-40085 (WJL)

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................4

I.    Debtor's Consensual Plan complies with all Subchapter V requirements.........................4

    A.    The Plan Satisfies Section 1129(a)(8) and can be confirmed under of 11 U.S.C. § 1191(a). ..................................................................................................5

    B.    The Plan is Fair and Equitable Pursuant to Section 1191(c) and is entitled to confirmation. ........................................................................................................6

        1.    The Plan is Fair and Equitable with Respect to Secured Claims. ................6

        2.    The Plan is Fair and Equitable with Respect to Unsecured Claims.............7

            i.    The Plan satisfies the Projected Disposable Income Test................8

            ii.    The Plan is feasible and provides reasonable remedies for default ........................................................................................8

    C.    The Plan Complies with Bankruptcy Code Section 1129(a)(1)............................10

        1.    The Plan Complies with the Classification Requirements of Bankruptcy Code Section 1122. ...................................................................11

        2.    The Plan Contains all Mandatory Provisions and Certain Permissive Provisions set Forth in Bankruptcy Code Section 1123. ..........................12

        3.    Debtor have complied with the requirements of Bankruptcy Code Section 1129(a). ....................................................................................13

            i.    The Plan is proposed in good faith, makes all required payments to professionals, and identifies directors, and thus satisfies the requirements of Section 1129(a)(3), (4), and (5) of the Bankruptcy Code.........................................................................14

            ii.    The Plan satisfies the "Best Interest" test requirement of Bankruptcy Code section 1129(a)(7) ..............................................16

            iii.    The Plan Complies with Bankruptcy Code Sections 1129(a)(9), 10, and (11) ...............................................................................17

    D.    The Plan Complies with Bankruptcy Code Section 1129(d) Because the Principal Purpose of the Plan is not to Avoid Taxes or Applicable Securities Laws. ..................................................................................................................18

CONCLUSION .........................................................................................................19

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

i

                                                                                                    **Page(s)**

**Cases**

*Brady v. Andrew (In re Commercial Western Fin. Corp.)*,
   761 F.2d 1329 (9th Cir. 1985) ................................................................................5, 11

*Fla. Partners Corp. v. Southeast Co. (In re Southeast Co.)*,
   868 F.2d 335 (9th Cir. 1989) ....................................................................................12

*Hamilton v. Lanning (In re Lanning)*,
   545 F.3d 1269 (10th Cir. 2008) ..................................................................................7

*Hanson v. First Bank of South Dakota*,
   828 F.2d 1310 (8th Cir. 1987) ..................................................................................14

*In re Acequia, Inc.*,
   787 F.2d 1352 (9th Cir. 1986) ..................................................................................18

*In re Corey*,
   892 F.2d 829 (9th Cir. 1989) ....................................................................................14

*In re Drexel Burnham Lambert Group*,
   138 B.R. 723 (Bankr. S.D.N.Y. 1992) .....................................................................16

*In re Eagle-Picher Indus., Inc.*,
   203 B.R. 256 (Bankr. S.D. Ohio 1996).....................................................................14

*In re Ellingsworth Residential Cmty. Ass'n*,
   6:20-bk-01346-KSJ, 2020 Bankr. LEXIS 2897(M.D. Fla. 2020) ...............................7

*In re Elsinore Shore Assocs.*,
   91 B.R. 238 (Bankr. N.J. 1988) ...............................................................................15

*In re Future Energy Corp.*,
   83 B.R. 470 (Bankr. S.D. Ohio 1988).......................................................................15

*In re Haardt*,
   65 B.R. 697 (Bankr. E.D. Pa. 1986) .........................................................................11

*In re Jeppson*,
   66 B.R. 269 (Bankr. D. Utah 1986) ..........................................................................13

*In re Montclair Retail Ctr., L.P.*,
   177 B.R. 663 (B.A.P. 9th Cir. 1995).........................................................................10

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*In re Patrician St. Joseph Partners*,
169 B.R. 669 (Bankr. D. Ariz. 1994) ...................................................17

*In re Pearl Res. LLC*,
622 B.R. 236 (S.D. Tex. 2020) .........................................................7

*In re Rexford Properties LLC*,
558 B.R. 352 (Bankr. C.D. Cal. 2016)................................................10

*In re Smith*,
123 B.R. 863 (Bankr. C.D. Cal. 1991) ................................................12

*In re Stolrow's Inc*,
84 B.R. 167 (B.A.P. 9th Cir. 1988) ....................................................14

*In re Sylmar Plaza, L.P.*,
314 F.3d 1070 (9th Cir. 2002) ..........................................................14

*In re Texaco Inc.*,
84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed* 92 B.R. 38 (S.D.N.Y. 1988) ...........10

*In re Toy & Sports Warehouse, Inc.*,
37 B.R. 141 (Bankr. S.D.N.Y. 1984)..................................................13

*In re WCI Cable, Inc.*,
282 B.R. 457 (Bankr. D. Or. 2002).....................................................18

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
843 F.2d 636 (2d Cir. 1988) .............................................................10

*Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*,
67 F.3d 1394 (9th Cir. 1995) ............................................................10

*Steelcase Inc. v. Johnston (In re Johnston)*,
21 F.3d 323 (9th Cir. 1994) ..............................................................10

*United States v. Energy Resources Co.*,
495 U.S. 545 (1990).......................................................................17

**Statutes**

11 U.S.C. 1191(c)(2)(A) .....................................................................7

11 U.S.C. § 1126(c) ..........................................................................16

11 U.S.C. § 1129(b)(2)(A)(i) ...............................................................6

11 U.S.C. § 1129(b)(2)(A)(ii) ..............................................................6

iii

CASE NO. 23-40085 (WJL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

7058363;15

11 U.S.C. § 1191 ...............................................................................5, 19

11 U.S.C. § 1191(b) .....................................................................5, 16, 17

11 U.S.C. § 1191(c)(1) .................................................................................6

11 U.S.C. § 1191(c)(2)(A) ...........................................................................7

11 U.S.C. § 1191(c)(3) .................................................................................8

11 U.S.C. § 1191(c)(3)(A) ..........................................................................18

11 U.S.C. § 1191(d)(2) .................................................................................7

Bankruptcy Code ...........................................................................1, 2, 7, 14

Bankruptcy Code Chapter 7 .....................................................................9, 16

Bankruptcy Code Chapter 11 ............................................................. passim

Bankruptcy Code § (5)...........................................................................14, 15

Bankruptcy Code § 10 ................................................................................17

Bankruptcy Code § (11)...............................................................................17

Bankruptcy Code § 507(a)(2) .....................................................................11

Bankruptcy Code § 507(a)(3) .....................................................................11

Bankruptcy Code § 507(a)(8) .....................................................................11

Bankruptcy Code § 1107(a) ..........................................................................2

Bankruptcy Code § 1108 ...............................................................................2

Bankruptcy Code § 1121 .............................................................................13

Bankruptcy Code § 1122 ........................................................................10, 11

Bankruptcy Code § 1122(a) ........................................................................10

Bankruptcy Code § 1123 ........................................................................10, 11

Bankruptcy Code § 1123 (3) .......................................................................12

Bankruptcy Code § 1123(a) ....................................................................11, 12

Bankruptcy Code § 1123(a)(1) ...................................................................11

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

Case: 23-40085    Doc# 138    Filed: 05/25/23    Entered: 05/25/23 00:07:27    Page 5 of 36

70588363;15

Bankruptcy Code § 1123(a)(2) and (3)..................................................................12

Bankruptcy Code § 1123(a)(4)..........................................................................12

Bankruptcy Code § 1123(a)(5)......................................................................12, 13

Bankruptcy Code § 1123(a)(6)..........................................................................11

Bankruptcy Code § 1123(a)(7)..........................................................................11

Bankruptcy Code § 1123(b)........................................................................11, 12

Bankruptcy Code § 1124....................................................................................12

Bankruptcy Code § 1125....................................................................................13

Bankruptcy Code § 1129......................................................................................5

Bankruptcy Code § 1129(15)...............................................................................5

Bankruptcy Code § 1129(a)................................................................................13

Bankruptcy Code § 1129(a)(1)...........................................................................10

Bankruptcy Code § 1129(a)(1)...........................................................................10

Bankruptcy Code § 1129(a)(2)...........................................................................13

Bankruptcy Code § 1129(a)(3)......................................................................14, 15

Bankruptcy Code § 1129(a)(4)......................................................................14, 15

Bankruptcy Code § 1129(a)(5)(A)(i)..................................................................15

Bankruptcy Code § 1129(a)(7)......................................................................15, 16

Bankruptcy Code § 1129(a)(8)........................................................................5, 16

Bankruptcy Code § 1129(a)(9)...........................................................................17

Bankruptcy Code § 1129(a)(9)(C).................................................................11, 17

Bankruptcy Code § 1129(a)(10)......................................................................5, 17

Bankruptcy Code § 1129(a)(11)....................................................................17, 18

Bankruptcy Code § 1129(b)..................................................................................5

Bankruptcy Code § 1129(b)(2)(A)........................................................................5

Case: 23-40085   Doc# 138   Filed: 05/25/23   Entered: 05/25/23 08:07:27   Page 6 of 36

7058836365;15

Bankruptcy Code § 1129(c) ................................................................................................5

Bankruptcy Code § 1129(d) ..........................................................................................18, 19

Bankruptcy Code § 1129(e) ................................................................................................5

Bankruptcy Code § 1181(a) ...........................................................................................5, 13

Bankruptcy Code § 1189(a) ...............................................................................................13

Bankruptcy Code § 1191(a) ................................................................................................5

Bankruptcy Code § 1191(c) ...........................................................................................5, 17

Bankruptcy Code § 1191(c)(1) .............................................................................................5

Bankruptcy Code § 1191(c)(2)(A) .......................................................................................8

Bankruptcy Code § 1191(c)(3)(B) .....................................................................................18

Bankruptcy Code § 1191(d) ...........................................................................................7, 8

Bankruptcy Code § 1191(e) ...............................................................................................17

§ 5 of the Securities Act of 1933 (15 U.S.C. § 77e) ..................................................12, 17

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

7058B363;15

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   FJC Management Inc., (the "Debtor"), a Nevada corporation, seeks to reorganize its business

2   under subchapter V of chapter 11 of the Bankruptcy Code ("Subchapter V").   By and through their

3   undersigned counsel, the Debtor hereby files this Memorandum of Law in Support of Plan of

4   Reorganization (the "Memorandum").

5       By this Memorandum, which is supported by the *Declaration of Pravesh Chopra in Support*

6   *of Confirmation of Plan* (the "Chopra Declaration") filed concurrently herewith, as well as the facts,

7   evidence and pleadings of record in this case, Debtor respectfully requests that the Court find that this

8   consensual Plan meets all of the requirements of the Bankruptcy Code and enter an order confirming

9   the Plan.

10              **FACTUAL AND PROCEDURAL BACKGROUND**

11      Debtor is in the business of operating fast casual sports bars under the Buffalo Wild Wings

12  ("BWW") franchise brand. Currently, Debtor operates four restaurants. These four restaurants are

13  located in Livermore, California, Dublin, California, Fairfield, California and Vacaville, California.

14  Debtor previously operated a restaurant in San Ramon, California that closed in late 2021. Debtor's

15  principal business office is located at 2150 Portola Avenue, Livermore, California.

16      On March 31, 2017, Debtor acquired its business from Tee it Up LLC. In 2020, however,

17  Debtor's business fell victim to the global COVID-19 pandemic.  In 2021, in an effort to stabilize its

18  business, Debtor obtained an EIDL loan from the Small Business Administration.  Under the terms of

19  the EIDL Loan Agreement, the Debtor received a loan in the aggregate principal amount of $500,000,

20  at an interest rate of 3.75% *per annum*. Debtor also attempted a number of cost saving measures,

21  including the modification and renegotiation of lease terms for all of its locations. The landlord for the

22  San Ramon location (the "San Ramon Landlord"), however, refused to provide any relief from

23  Debtor's rent obligations during the COVID-19 pandemic,  commenced litigation against the Debtor

24  in California state court, and obtained a pre-judgment attachment order.

25      As a result of the store's reduced revenue and pressures from the San Ramon Landlord, the

26  Debtor ceased its operation of the San Ramon location in late 2021. Since that time, Debtor engaged

27  in good faith negotiations to settle rent arrears with the San Ramon Landlord. Debtor extended realistic

28

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1 and reasonable offers, but the San Ramon landlord refused to settle thereby necessitating Debtor's

2 bankruptcy filing.

3      On January 25, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under

4 subchapter V of chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

5 Debtor continues to operate its business as debtor in possession under sections 1107(a) and 1108 of

6 the Bankruptcy Code. Debtor filed for protection under Sub-chapter V to reorganize its debts and

7 obligations so that, going forward, Debtor may continue to operate as a going concern and preserve

8 cash value for the Debtor's stakeholders, including all creditors and 120 employees.

9      On April 25, 2023, Debtor filed its Plan of Reorganization for Small Business Under Chapter

10 11 and Plan Complement, as Docket No. 109 (the "Plan"). Thereafter, on May 3, 2023, the Court

11 entered the *Order Setting Confirmation Hearing and Related Deadlines* as Docket No. 113 (the

12 "Confirmation Hearing Order") and set a confirmation hearing for May 31, 2023, at 10:30 a.m. The

13 Confirmation Hearing Order set May 23, 2023 at 4:00 p.m. prevailing Pacific Time as the deadline for

14 creditors and parties in interest to submit ballots accepting or rejecting Debtor's plan and objections

15 to confirmation of Debtor's plan.

16      Debtor filed the Declaration of Mark Lichtenstein Regarding Summary of Tabulation of

17 Ballots for Accepting or Rejecting Chapter 11 Plan of Reorganization, on May 26, 2023, as Docket

18 No. 137 (the "Ballot Summary".). As reflected in the Ballot Summary, (a) six (6) creditors in Class

19 3, Platte River Ins. Co., Upshow, Inc., Vine Center, Carmen Spinoso, Court Appointed Receiver for

20 Star-West Solano, LLC ("Star-West Solano"), The Marketplace at San Ramon LLC (the "San Ramon

21 Marketplace") and SiV LLC submitted Class 3 ballots. Platte River Ins. Co., Upshow, Inc., Star-West

22 Solano, San Ramon Marketplace and Siv LLC voted to accept the Plan representing $2,019,820.49 or

23 100% of all Class 3 claims that voted; and (b) San Ramon Marketplace submitted a Class 2 ballot to

24 accept the Plan representing $5,317 or 100% of all Class 2 claims that voted. Class 3 creditor Vine

25 Center voted to reject the Plan, but subsequently withdrew its negative Ballot. No creditor or party-

26 in-interest has objected to the Plan.

27

28

Case: 23-40085    Doc# 138    Filed: 05/25/23    Entered: 05/25/23 00:07:27    Page 9 of 36

70588363;15

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Even if the Debtor had to seek confirmation of the Plan under Section 1191(b) of the Bankruptcy Code, the Plan satisfies the Bankruptcy Code's fair and equitable standards for Subchapter V cases by unitarizing projecting net disposable income of **$778,268** to pay creditors. Impaired classes of general unsecured claimants (the "GUCs"), will receive a pro rata distribution of **$209,770[1]** in projected net disposable income over the course of three years, which will result in an 8-10% recovery by the GUCs, and full payment to non-classified Priority Tax Claimants (the "Priority Tax Claimants"), over the course of three years.

Since the filing of the Plan, the Debtor has updated its projections (the "Revised Projections"). The Revised Projections account for the closure of its Livermore location on June 30, 2023, the associated costs thereof, and payment of Priority Tax Claimants, with interest, and certain pressing capital expenses learned of after the filing of the Plan with respect to the Fairfield Location. Attached to the Chopra Declaration in Support of Plan Confirmation as **Exhibit A** are Debtor's updated projections[2]. Under Debtor's Revised Projections, the net disposable income has increased from **$762,227** to **$778, 268**. Under the Revised Projections, GUCs, shall receive a pro rata distribution of **$209,770** which is an increase of **$16,041.**[3] Under the Plan, GUCs and Priority Tax Claimants will fare far better than in a liquidation scenario where Priority Tax Claimants would receive a partial distribution and GUCs would receive nothing.

Notably, as set forth more fully below, the Debtor's principals, Pravesh Chopra and Ishwinder Judge (collectively, the "Principals"), have agreed to personally pay approximately **$219,723.14** in a

---

[1] After filing of the Plan, the Debtor was able to enter into a stipulation allowing it to vacate the Livermore location and terminate the lease with the Livermore landlord as of June 30, 2023. By ceasing operations at the Livermore location earlier than planned, the net disposable income for GUCs has increased marginally.

[2] The Revised Projections are attached to the Chopra Declaration as **Exhibit "A"** and will be incorporated into the proposed order approving confirmation of the Plan submitted herewith (the "Confirmation Order").

3

CASE NO. 23-40085 (WJL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

70588363;15

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

combination of cure costs,[4] payments to acquire the San Ramon Claim[5] (as described below), and the projected fees of the Sub-Chapter V Trustee.[6] These personal advances are in addition to the Principals personally committing to pay for any capital improvements that may be required by the Debtor's franchisor, BWW, during the Plan period. The payments made, and to be made by the Principals, are in addition to the **$116,000** contributed by the Principals to satisfy payroll both pre and post-petition.

The various Plan modifications discussed herein shall be incorporated into the Confirmation Order and reflect, *inter alia*, the changes resulting from Debtor's claim review and negotiation process, the financial effect of the earlier termination of the Livermore lease, the non-classification of the Priority Tax Claimants, and revised language requested by the Sub-Chapter V Trustee regarding re-vesting and preservation of potential avoidance actions to be prosecuted only in the event of default under the Plan.

## ARGUMENT

### I. Debtor's Consensual Plan complies with all Subchapter V requirements.

Under Bankruptcy Code section 1191(a), the Court "shall" confirm a plan filed under Subchapter V of chapter 11 of the Bankruptcy Code if all of the applicable confirmation requirements set forth in Bankruptcy Code section 1129 are satisfied. 11 U.S.C. § 1191; *see Brady v. Andrew (In re Commercial Western Fin. Corp.)*, 761 F.2d 1329, 1338 (9th Cir. 1985). Pursuant to Bankruptcy Code section 1181(a), however, sections 1129(b), (c), and (e) do not apply to Subchapter V cases. Additionally, pursuant to section 1191(b), a plan is entitled to confirmation notwithstanding satisfaction of sections 1129(a)(8), (10), and (15), if the plan "is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b). As discussed below, in addition to being a consensual Plan, the Plan also meets the fair and

---

[4] Here, the Cure Costs consist of: $10,000 (assumption of the Fairfield location lease), and $59,723.14 (assumption of the Dublin location lease).

[5] The settlement with the San Ramon Landlord will be accomplished by a $125,000 payment by the Debtor's principals to acquire the San Ramon Claim which will pave the way for consensual confirmation and spare the estate the incurrence of material additional professional fees attendant to a contested confirmation process.

[6] Sub-Chapter V Trustee fees amount to $25,000.

4

7058836$3;15

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   equitable standard as set forth in section 1191(c) and satisfies all of the applicable confirmation

2   requirements of section 1129. Therefore, the Plan is entitled to confirmation.

3       **A.    The Plan Satisfies Section 1129(a)(8) and can be confirmed under of 11 U.S.C. §**
4           **1191(a).**

5       Bankruptcy Code section 1129(a)(8) requires that each class of claims and interests has either

6   accepted the plan or is not impaired under the plan. *See* 11 U.S.C. § 1129(a)(8). A class of claims

7   accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of

8   claims of that class vote to accept the plan, counting only those claims whose holders actually vote on

9   the plan. *See* 11 U.S.C. § 1126(c). As reflected in the Ballot Summary, (a) six (6) creditors in Class 3,

10  Platte River Ins. Co., Upshow, Inc., Vine Center, Carmen Spinoso, Star-West Solano, the San Ramon

11  Marketplace and SiV LLC submitted Class 3 ballots. Platte River Ins. Co., Upshow, Inc., Star-West

12  Solano, San Ramon Marketplace and Siv LLC voted to accept the Plan representing $2,019,820.49 or

13  100% of all Class 3 claims that voted; and (b) San Ramon Marketplace submitted a Class 2 ballot to

14  accept the Plan representing $5,317 or 100% of all Class 2 claims that voted. Class 3 creditor Vine

15  Center voted to reject the Plan, but subsequently withdrew its negative Ballot.  No creditor or party-

16  in-interest objected to the Plan.

17      The Debtor had classified Priority Tax Claims as an impaired Class of Claims and none of the

18  three holders of Priority Tax Claims voted with respect to the Plan.  The Plan has now been modified

19  to not classify the Priority Tax Claims as an impaired voting class but rather to treat Priority Tax

20  Claims under Article 3, Section 3.03, of the Plan as a Priority Tax Claim in accordance with Section

21  1129(a)(9), of the Bankruptcy Code, such that the holders of Priority of Priority Tax Claims are no

22  longer a voting Class.  Alternatively, if the proposed immaterial modification of the Plan to designate

23  Priority Tax Claims as unclassified Claims under Section 3.03 of the Plan and in accordance with

24  Section 1129(a)(9), as the Debtor has proposed to pay the Priority Tax Claims quarterly paymentswith

70588363;15

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

interest over the three year Plan period such the Priority Tax Claims, even if classified in Class 1, would be unimpaired and not entitled to vote.

Therefore, the Plan satisfies Section 1129(a)(8), and as set forth below, all other applicable confirmation requirements of Section 1129. Thus, the Plan can be confirmed under 1191(a). However, in an abundance of caution, the Debtor will also outline how the Plan also meets the fair and equitable standard.

### B. The Plan is Fair and Equitable Pursuant to Section 1191(c) and is entitled to confirmation.

In a Subchapter V case, a plan that is non-consetual is entitled to confirmation so long as the Plan is "fair and equitable" as defined in Section 1191(c).

#### 1. *The Plan is Fair and Equitable with Respect to Secured Claims.*

Under Bankruptcy Code section 1191(c)(1), a plan is fair and equitable with respect to secured claims if the plan satisfies section 1129(b)(2)(A) that requires the holder of a secured claim retain its liens securing its claim and receive on account of such claim deferred cash payments totaling at least the amount of the allowed claim as of the effective date of the plan, or the realization by the holder of such claim of the indubitable equivalent of its claim. *See* 11 U.S.C. §§ 1191(c)(1), 1129(b)(2)(A)(i) & (ii).

Here, the Secured Claim is classified under Class 2. There is only one claimant in Class 2. Debtor's one alleged secured claimant is the San Ramon Landlord, which filed a bifurcated claim in the amount of $680,742.71 as a secured claim and an unsecured claim in the amount of $398,146.79. As the Debtor erroneously believed that the Sherriff of Alameda County was holding the sum of $30,000 seized pre-petition from the Debtor, the Debtor determined to classify the San Ramon Landlord as secured creditor in the amount of $30,000 and unsecured creditor in the amount of $1,048,889.00 in order to potentially entice the San Ramon Landlord, its most vigorous adversary, to support the Plan.

CASE NO. 23-40085 (WJL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

70588363;15

On May 1, 2023, the Debtor objected to the San Ramon arguing, among other things, that under established Ninth Circuit and California law, the San Ramon Claim is wholly unsecured as the San Ramon Landlord never obtained a final judgment in the State Court Action. As noted above, notwithstanding the Debtor's arguments that the Claim is wholly unsecured, the Debtor nonetheless proposed in the Plan to treat the San Ramon Landlord as a secured creditor up to $30,000, which the Debtor erroneously believed was being held by the Alameda County Sheriff, in the hopes of enticing the San Ramon Landlord to vote in favor of the Plan. The San Ramon Landlord confirmed that the Sheriff of Alameda County is only holding $5,371 of estate funds.

After further negotiations between the San Ramon Landlord, the Debtor, and the Principals, the parties arrived at a settlement of the claim objection, the San Ramon Claim, and its informal confirmation objections by providing for the acquisition of the San Ramon Landlord's Claim by the Principals. *See* Plan Supplement (i) Resolving Informal Plan Objections by The Market Place at San Ramon, LLC and (ii) Amending Certain Cure Amounts [Docket No. 132 ].

Thus, at this juncture there are not any genuine secured claimants as the San Ramon Landlord's Secured Claim was gratuitous in the first instance and will be paid in full as of the Effective Date. In any event, as part of the settlement of the Claims of the San Ramon Landlord, the San Ramon Landlord has voted its Class 2 Claim in favor of the Plan.

### 2. *The Plan is Fair and Equitable with Respect to Unsecured Claims.*

The Bankruptcy Code is clear —a plan is fair and equitable if: (i) it proposes to commit all of debtor's projected disposable income for the entire term of the plan to making plan payments, or the equivalent thereof; (ii) the debtor is able to make payments under the plan or there is a reasonable likelihood that the debtor will be able to make the payment, and (iii) the plan provides appropriate remedies for default. Thus, a Subchapter V plan allows a debtor's equity holders to retain their equity, even if unsecured creditors are not paid in full. Debtor will address each element in turn. 11 U.S.C. §§ 1191(c)(2)(A), 1191(d)(2).

Case: 23-40085   Doc# 138   Filed: 05/25/23   Entered: 05/25/23 09:07:29   Page 14 of 36

7058363;15

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*i.    The Plan satisfies the Projected Disposable Income Test*

In order to satisfy the disposable income test, a plan of reorganization need only provide that all of debtor's projected disposable income, received in the three-year period after the first payment under the plan is due, will be applied to making payments under the plan. U.S.C. 1191(c)(2)(A).

Disposable income is income that is received by the debtor and that is not "reasonably necessary to be expended for…the maintenance and support of the debtor or dependent of the debtor, a domestic support obligation…payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor." *In re Pearl Res. LLC*, 622 B.R. 236, 268 (S.D. Tex. 2020) (citing 11 U.S.C. 1191(d)(2)); *In re Ellingsworth Residential Cmty. Ass'n*, 6:20-bk-01346-KSJ, 2020 Bankr. LEXIS 2897, 6*(M.D. Fla. 2020) (citing 11 U.S.C. § 1191(d)(2)). Moreover, when determining projected disposable income, a debtor's actual circumstances at the time of plan confirmation are proper considerations to project, or forecast, how much income the debtor would actually receive. *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269, 1282 (10th Cir. 2008). As such, the Plan does not mechanically apply debtor's historical income.

Here, the Debtor's projected disposable income according to section 1191(d) will be **$778,268** over the three-year term of the Plan. Under the Plan, **$209,770** of projected disposable income will be used to make pro rata payments over the life of the Plan to the impaired Class of general unsecured claimants. The Plan therefore is fair and equitable within the meaning of section 1191(c)(2)(A) with respect to the treatment of the Classes of unsecured claims.

*ii.    The Plan is feasible and provides reasonable remedies for default*

Pursuant to section 1191(c)(3) there must be a reasonable likelihood that the debtor will be able to make all payments under the plan and the plan must provide an appropriate remedy to protect the holders of claims and interests in the event payments are not made. *See* 11 U.S.C. § 1191(c)(3).

As discussed further below and in the Plan, the Debtor projects that it will generate **$778,268** in disposable income as defined in section 1191(d) over the three-year life of the Plan. Pursuant to the

CASE NO. 23-40085 (WJL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

Case: 23-40085    Doc# 136    Filed: 05/29/23    Entered: 05/29/23 00:07:25    Page 15 of 36

70588363;15

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1  Debtor's projections, there is greater than a reasonable likelihood that the Debtor will be able to make

2  all payments under the Plan.

3  Here, the Principals will provide a cash infusion of approximately **$219,723.14**. to fund

4  Effective Date payment obligations and to acquire certain claims. Further, in order to allow unsecured

5  creditors to receive a meaningful dividend, the Principals, who have the financial wherewithal to do

6  so, have also agreed to personally satisfy potential capital expenditure obligations that may be required

7  by its franchisor, BWW, over the life of the Plan.

8  The Debtor's Plan Complement, Section XI, provides for default remedies. In response to

9  comments from the Sub-Chapter V Trustee, the Debtor has revised its Default Remedies language to

10  reflect the following:

11  > **Default Remedies.** If the Debtor does not make the payments provided
12  > for under the Plan as and when due, the Debtor will be in default under
13  > the Plan ("**Default**"). After the occurrence of a Default, any creditor
14  > may send written notice to the Debtor, with a copy to Debtor's attorney
15  > and the Subchapter V Trustee, that the Debtor is in Default under the
16  > Plan ("**Default Notice**"). The Debtor will be entitled to a 45-day grace
17  > period after the transmission of the Default Notice ("**Grace Period**") to
18  > cure the default. If the Debtor has not cured the Default within the Grace
19  > Period, the creditor is entitled to commence a lawsuit in the Federal or
20  > State Courts of the State of California to liquidate its claim. This
21  > provision survives the confirmation of the Plan, and creditors are
22  > entitled to enforce this provision post confirmation. The Court retains
23  > jurisdiction to enforce this provision of the Plan. In the event of an
24  > uncured Default, the Subchapter V Trustee will receive express
25  > authority to investigate and prosecute all potential actions arising under
26  > Chapter 5 of the Bankruptcy Code. As a condition to the Effective Date
27  > and solely in the event of a Default, on or before the Effective Date, (i)
28  > the Subchapter V Trustee shall receive tolling agreements with respect
    > to potential avoidance actions, and (ii) the potential avoidance actions
    > shall be preserved to be prosecuted by the Subchapter V Trustee or a
    > successor Chapter 7 Trustee thereto.
    >
    > On the Effective Date, any and all potential avoidance claims arising
    > under Chapter 5 of the Bankruptcy Code against Pravesh Chopra and/or
    > Ishwinder Judge (the "Avoidance Claims") shall be expressly preserved
    > for any future Chapter 7 Trustee, and/or the Sub-Chapter V Trustee,
    > and/or his successor trustee, if any, regardless of whether there is a
    > Default under the Plan. Solely in the event of a Default under the Plan
    > that is not cured by the expiration of the Grace period, and/or upon a

9  CASE NO. 23-40085 (WJL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

70588363;15

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   conversion of the case to Chapter 7, a future Chapter 7 Trustee, and/or
2   the Subchapter V Trustee, and/or his successor trustee, if any, will be
    entitled to prosecute the Avoidance Claims against Pravesh Chopra and
3   Ishwinder Judge.   As a condition precedent to the Effective Date,
    Pravesh Chopra and Ishwinder Judge shall execute tolling agreements
4   with respect to the Avoidance Claims in favor of the Debtor's
    bankruptcy estate, the Subchapter V Trustee and his successor, if any,
5   and any future Chapter 7 Trustee that may be appointed in this case to a
    future date that is at least six months past the payment term
6   contemplated by the Plan.

7        Accordingly, the Plan is feasible and provides reasonable remedies for default. Particularly

8   here, where, as noted above, upon default the Subchapter V Trustee will receive tolling agreements

9   with respect to avoidance actions against the Principals, and (ii) such potential avoidance actions shall

10  be preserved to be prosecuted by the Subchapter V Trustee, a successor, if any,  or a future Chapter 7

11  Trustee. For these reasons, the Plan is fair and equitable.

12
13       **C.       The Plan Complies with Bankruptcy Code Section 1129(a)(1).**

14       Bankruptcy Code section 1129(a)(1) requires that a plan comply with the "applicable

15  provisions of this title." *See* 11 U.S.C. § 1129(a)(1); *Resorts Int'l., Inc. v. Lowenschuss (In re*

16  *Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995). "[T]he legislative history of Subsection 1129(a)(1)

17  suggests that Congress intended the phrase 'applicable provisions' in this Subsection to mean

18  provisions of Chapter 11 that concern the *form* and *content* of reorganization plans..." *Kane v. Johns-*

19  *Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988) (emphasis added).

20  The two applicable provisions relating to the form and content of a plan of reorganization are

21  Bankruptcy Code sections 1122 and 1123, which govern classification of claims and interests and the

22  contents of a plan, respectively. *See In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988),

23  *appeal dismissed* 92 B.R. 38 (S.D.N.Y. 1988) ("In determining whether a plan complies with section

24  1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to classification of claims

25  and the contents of a plan of reorganization."). As demonstrated below, the Plan complies with both

26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN
OF REORGANIZATION FOR SMALL BUSINESS**

Case: 23-40085    Doc# 138    Filed: 05/25/23    Entered: 05/25/23 00:07:25    Page 17 of 36
70588363;15

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    Bankruptcy Code sections 1122 and 1123, and thus satisfies the requirements of Subsection

2    1129(a)(1).

3             **1.       *The Plan Complies with the Classification Requirements of Bankruptcy Code Section 1122.***

4

5             Section 1122(a) of the Bankruptcy Code requires that each claim or interest within a class be

6    substantially similar to all other claims or interests within that class. *See* 11 U.S.C. § 1122(a). Courts

7    are afforded broad discretion to decide the propriety of classification in plans in light of the facts of

8    each case. *See Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994). A plan

9    proponent is afforded significant flexibility in classifying claims under § 1122(a) provided there is a

10   reasonable, non-discriminatory basis for the classification scheme and all claims within a particular

11   class are substantially similar. *See In re Montclair Retail Ctr., L.P.*, 177 B.R. 663, 665 (B.A.P. 9th Cir.

12   1995) (citing *In re Johnston, supra*); *In re Rexford Properties LLC*, 558 B.R. 352, 361 (Bankr. C.D.

13   Cal. 2016). Here, the Plan's classification of Claims satisfies the requirements of Bankruptcy Code

14   section 1122.

15            In the Plan, Debtor outlined three classes of impaired claims which are comprised of one class

16   of priority tax claims, one class of secured claims, and one class of non-priority unsecured claims.

17   There is also one class of equity security holders. The Debtor originally classified Priority Tax

18   Claimants under Article 4 as an impaired class entitled to vote and provided holders of Priority Tax

19   Claims cash equal to 100% of the allowed amount of such claims paid in equal quarterly installments

20   over the life of the Plan without interest.  The Debtor has determined not to classify its Priority Tax

21   Claimants as holding impaired Claims entitled to vote.  Pursuant to a proposed modification of the

22   Plan, Priority Tax Claimants shall receive cash equal to 100% of the allowed amount of such claim

23   paid in equal quarterly installments over the life of the Plan, plus interest, in accordance to Section

24   1129(a)(9)(C) of the Bankruptcy Code.  This way, the Plan will be entirely consensual as the Class 1

25   Claimants did not vote with respect to the Plan.  If the Court is not amenable to Debtor's determination

26   to not classify the Priority Tax Claimants as a voting class, the Debtor will continue the classification

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

70588363;15

of the Priority Tax Claims in Article 4 but provide that Priority Tax Claims are unimpaired in that they are being treated in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code.

Therefore, the Plan as modified complies with Bankruptcy Code Section 1122.

### 2. *The Plan Contains all Mandatory Provisions and Certain Permissive Provisions set Forth in Bankruptcy Code Section 1123.[7]*

Bankruptcy Code section 1123(a) sets forth mandatory requirements for a plan, and section 1123(b) identifies various permissive provisions that may be included in a plan but which are not required. The Plan proposed in this case complies with both sections 1123(a) and (b).

Bankruptcy Code section 1123(a)(1) requires that a plan designate classes of claims and interests, other than claims of a kind specified in Bankruptcy Code section 507(a)(2) (administrative expense claims), Bankruptcy Code section 507(a)(3) (claims arising during the "gap" period in an involuntary case), and Bankruptcy Code section 507(a)(8) (priority tax claims). *See* 11 U.S.C. § 1123(a)(1); *see also In re Haardt*, 65 B.R. 697, 700 (Bankr. E.D. Pa. 1986); *accord In re Commercial W. Fin. Corp.*, 761 F.2d 1329, 1334 (9th Cir. 1985). Moreover, Bankruptcy Code section 1123(a)(2) and (3) requires that a plan specify any class of claims or interests that are impaired and those that are not impaired under the plan. 11 U.S.C. § 1123(a)(2), (3); *see also In re Smith*, 123 B.R. 863, 865 (Bankr. C.D. Cal. 1991). Under Bankruptcy Code section 1124, a class of claims or interests is impaired unless each claim in that class is treated in either of the following ways: (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest is entitled; or (2) the plan cures any default, reinstates the maturity, compensates the holder for damages and does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder. *See* 11 U.S.C. § 1124. Here, Section V of the Plan Complement classifies the general broad classes of the Plan and further describes each class of claims, treatment, and specifies if they are impaired. Therefore, the Plan complies with section 1123 (a),(b), and (3).

---

[7] Debtor does not discuss, non-applicable provisions, or non-controversial provisions like section 1123(a)(6) and 1123(a)(7).

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

7058836315

Bankruptcy Code section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). As set forth in Section V of the Plan Complement the same treatment is provided for each allowed claim or interest in each of the classes.

Bankruptcy Code section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation" and sets forth several examples of such adequate means. 11 U.S.C. § 1123(a)(5); *see also Fla. Partners Corp. v. Southeast Co. (In re Southeast Co.)*, 868 F.2d 335 (9th Cir. 1989). The means for implementing the Plan are set forth throughout the plan, but are primarily based on Debtor's Projections, and are described in Section III of the Plan Complement. In relevant part Section III notes, that "the Debtor will pay its Projected Disposable Income to creditors, including priority creditors, in order to perform under and consummate the Plan. The Debtor will use these funds to pay 100% to priority creditors and allowed unsecured creditors on a pro rata basis each over the three years following the Effective Date of the Plan or as soon as practicable thereafter. In addition to the Projected Disposable Income, the required Effective Date payments will be satisfied by a combination of the Debtor's available cash from operations, as of the Effective Date and personal funds advanced by the Principals in the amount of approximately **$219,723.14.** Further, in order to allow unsecured creditors to receive a meaningful dividend, the Principals have agreed to personally satisfy potential capital expenditure obligations that may be required by its franchisor, BWW, over the life of the Plan.

Thus, the Plan provides adequate means for its implementation in satisfaction of section 1123(a)(5).

**3.** *Debtor have complied with the requirements of Bankruptcy Code Section 1129(a).*

Bankruptcy Code section 1129(a)(2) requires that the proponent of the plan also comply with "the applicable provisions" of title 11. 11 U.S.C. § 1129(a)(2). The "applicable provisions" of title 11 are Bankruptcy Code section 1121 (dealing with who may file a plan) and Bankruptcy Code section

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1125 (dealing with the solicitation of acceptances of a plan). *See In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984). While Bankruptcy Code section 1121 which determines who may file a plan in a typical Chapter 11 bankruptcy is inapplicable to Subchapter V cases pursuant to Bankruptcy Code section 1181(a), Bankruptcy Code section 1189(a) provides that only the debtors in a Subchapter V case may file the Plan. Accordingly, the Plan has been proposed by the Debtor.

Additionally, one of the principal purposes of Bankruptcy Code section 1129(a)(2) is to ensure that plan proponents have complied with the requirements of Bankruptcy Code section 1125 in the solicitation of acceptances of a plan of reorganization. *See, e.g., In re Jeppson*, 66 B.R. 269, 296-97 (Bankr. D. Utah 1986); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. at 149 ("the Proponent must comply with the ban on post-petition solicitation of the plan unaccompanied by a written disclosure statement approved by the court in accordance with §§ 1125 and 1126"). Bankruptcy Code section 1181(b) provides that no disclosure statement is required unless the Court order otherwise. The Court did not order otherwise. Thus, the requirements of section 1129(a)(2) have been met.

> **i.** *The Plan is proposed in good faith, makes all required payments to professionals, and identifies directors, and thus satisfies the requirements of Section 1129(a)(3), (4), and (5) of the Bankruptcy Code*

Bankruptcy Code section 1129(a)(3) requires a plan to be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Although the term "good faith" is left undefined by the Bankruptcy Code, "[i]n the context of a chapter 11 reorganization . . . a plan is considered proposed in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'" *Hanson v. First Bank of South Dakota*, 828 F.2d 1310, 1315 (8th Cir. 1987) (quoting *In re Toy & Sports Warehouse, Inc.*, 37 B.R. at 149 (Bankr. S.D.N.Y. 1984)). For a plan to be proposed in good faith, it "must be intended to achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Corey,* 892 F.2d 829, 835 (9th Cir. 1989); *In re Stolrow's Inc,* 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) ("Good faith requires that a plan will achieve a result consistent with the objectives and purposes of the Code."). Additionally, courts have

Case: 23-40085    Doc# 138    Filed: 05/25/23    Entered: 05/25/23 00:07:29    Page 21 of 36

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   generally held that the "good faith" requirement should be considered in light of the totality of

2   circumstances. *In re Sylmar Plaza, L.P.,* 314 F.3d 1070, 1074 (9th Cir. 2002) ("The requisite good

3   faith determination is based on the totality of the circumstances"), citing *In re Stolrow's, Inc.*, 84 B.R.

4   at 172. Finally, good faith for purposes of section 1129(a)(3) of the Bankruptcy Code also may be

5   found where the plan is supported by key creditor constituencies, or was the result of extensive arm's-

6   length negotiations with creditors. *In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 274 (Bankr. S.D.

7   Ohio 1996).

8          From the facts and the circumstances of this case, it is evident that the Debtor has proposed the

9   Plan in good faith. Here, Debtor, faced with the unprecedented financial stress caused in large part by

10  the COVID-19 pandemic, pressure from the San Ramon Landlord and the wage and hour proceeding

11  in California Superior Court, has sought reorganization under Subchapter V. As a result, Debtor has

12  conducted an in-depth financial analysis to forecast which store locations are likely to be successful

13  and which locations will not be profitable. As part of this analysis and plan preparation, Debtor has

14  engaged in negotiations with landlords to settle cure amounts on unexpired executory contracts.

15  Several landlords have reached agreements with the Debtor regarding cure amounts and lease

16  amendments.

17         Bankruptcy Code section 1129(a)(4) requires payments to estate professionals to be approved

18  by the Bankruptcy Court or subject to the Bankruptcy Court's approval. 11 U.S.C. § 1129(a)(4). The

19  Official Form Plan implies a requirement for Court review of all applications for final compensation

20  of professionals for services rendered and for reimbursement of expenses incurred during the pendency

21  of bankruptcy case. *See* Article 3.02; *see also In re Future Energy Corp*., 83 B.R. 470, 488 (Bankr.

22  S.D. Ohio 1988) ("Court approval of payments for services and expenses is governed by various Code

23  provisions -- e.g., §§ 328, 329, 330, 331 and 503(b) -- and need not be explicitly provided for in a

24  Chapter 11 plan."); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. N.J. 1988) (holding that

25  requirements of § 1129(a)(4) were satisfied where plan provided for payment of only "allowed"

26  administrative expenses).

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

Case: 23-40085   Doc# 136   Filed: 05/25/23   Entered: 05/25/23 00:07:25   Page 22 of 36

70588363;15

The Plan complies with section 1129(a)(4) because it calls for the payment of allowed administrative expenses upon Court approval in Article 3.02, and Section VIII of the Plan Complement confirms that the Court retains jurisdiction over payments to estate professionals.

Pursuant to Bankruptcy Code section 1129(a)(5)(A)(i), a proponent of a plan must disclose the identity of the debtor's management post-effective date. Here, Section III of the disclosed the identity of Debtor's post-effective date management. Therefore, the Plan satisfies Section 1129(a)(3), (4), and (5) of the Bankruptcy Code.

ii.      The Plan satisfies the "Best Interest" test requirement of Bankruptcy Code section 1129(a)(7)

The "best interest" test set forth in section 1129(a)(7) requires that the plan proponent demonstrate that: with respect to each impaired class of claims or interests "has accepted the plan, or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1128(a)(7).

The "best interests" test focuses on individual dissenting creditors rather than classes of claims. *See, In re Drexel Burnham Lambert Group*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992). On its face, section 1129(a)(7) only applies to impaired and classified claims or interests. It does not, therefore, apply to unimpaired or unclassified claims. As set forth in greater detail in **Exhibit 1** to the Plan all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

In a liquidation under Chapter 7, Debtor foresees only $132,500.00 in total gross liquidation proceeds. Administrative fees alone, in liquidation, would amount to approximately $300,000. Thus, under a liquidation analysis, liquidating proceeds will not suffice to cover all administrative fees; thus, Priority Tax Claimants, and GUCs, would not receive a distribution. While under the terms of the Plan, administrative claims, the cure claims, including those of BWW, and Priority Tax Claimants are

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

70588363;15

paid in full and GUCs receive a distribution of **$209,770** in projected net disposable income over the course of three years.

Therefore, the Plan satisfies Section 1129(a)(7).

         *iii.*    *The Plan Complies with Bankruptcy Code Sections 1129(a)(9), 10, and (11)*

Bankruptcy Code section 1129(a)(9) provides generally that administrative and non-priority tax claims must be paid in full on the effective date of a plan, and that priority tax claims may be paid in installments over a period not greater than five years. *See* 11 U.S.C. § 1129(a)(9). However, Bankruptcy Code section 1191(e) allows for the payment of administrative expense claims to be paid through the life of the plan. Here, Article 3.02 of the Plan requires that allowed administrative expense claims be paid in full on the Effective Date or upon terms as may be agreed upon by the holder of the claim and Debtor. Section V of the Plan provides for priority tax claims to be paid in regular installments consistent with Section 1129(a)(9)(C) and for certain professional fees to be paid over the life of the Plan. Thus, the Plan complies with Sections 1129(a)(9) and 1191(e).

Bankruptcy Code section 1129(a)(10) requires at least one class of impaired claims to have accepted the plan, determined without including any acceptance of the plan by an insider holding a claim in such class. *See* 11 U.S.C. § 1129(a)(10). Here, no creditors voted to the reject the Plan and the confirmation of the Plan is consensual. Even if the confirmation of the Plan was sought by the Debtor in a non-consensual context and there was no impaired accepting class of claims section 1191(b) provides that the Plan shall be confirmed notwithstanding failure to comply with 1129(a)(10).

Lastly, Bankruptcy Code Section 1129(a)(11) requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation is proposed in the plan." 11 U.S.C. § 1129(a)(11). This is sometimes referred to as the "feasibility test," and requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success. *See In re Patrician St. Joseph Partners*, 169 B.R. 669, 674 (Bankr. D. Ariz. 1994). Feasibility does not, nor can it, require

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

CASE NO. 23-40085 (WJL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

70588363;15

the certainty that a reorganized company will succeed. *See, e.g., United States v. Energy Resources Co.,* 495 U.S. 545, 549 (1990); *In re WCI Cable, Inc.*, 282 B.R. 457, 486 (Bankr. D. Or. 2002) ("Guaranteed success in the stiff winds of commerce without the protection of the Code is not the standard under § 1129(a)(11)"). The feasibility standard merely requires the Court to determine whether a plan is workable and has a reasonable likelihood (*i.e.*, more likely than not) of success. *In re Acequia, Inc.*, 787 F.2d 1352, 1364-1365 (9th Cir. 1986). In the Subchapter V context, the Court must find either that the "debtor will be able to make all payments under the plan" or that "there is a reasonable likelihood that the debtor will be able to make all payments under the plan." 11 U.S.C. § 1191(c)(3)(A). Section 1191(c)(3)(B) further requires remedies in the event that payments are not made.

Here, Debtor is confident in its forecast of Debtor's finances and revenue over the course of the Plan and does not believe that confirmation of the Plan will be followed by the need for further reorganization. Debtor has the funds necessary to make all required payments necessary to be paid by the Effective Date. Debtor will (1) use available cash on the Effective Date, plus funds infused by the Debtor's principals, to pay 100% of certain allowed administrative expense claims (although a portion of the administrative claims required to be paid on the Effective Date of the Plan will be funded from a combination of Debtor's cash on hand as of the Effective Date or contributions by Debtor's Principals and/or paid over time under the Plan from Projected Disposable Income), (2) use Projected Disposable Income to satisfy 100% of all allowed priority tax claims in equal quarterly installments with interests over the life of the Plan, and (3) use Projected Disposable Income to provide distributions to allowed unsecured creditors on a pro rata basis over the three years following the Effective Date of the Plan, or as soon as practicable thereafter.

Thus, confirmation of the Plan is feasible and not likely to be followed by the need for further reorganization.

**D.     The Plan Complies with Bankruptcy Code Section 1129(d) Because the Principal Purpose of the Plan is not to Avoid Taxes or Applicable Securities Laws.**

Lastly, Bankruptcy Code section 1129(d) provides:

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Case: 23-40085    Doc# 136    Filed: 05/25/23    Entered: 05/25/23 09:07:25    Page 25 of 36
70588363;15

**AKERMAN LLP**

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

> Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). 11 U.S.C. § 1129(d).

Here, the principal purpose of the Plan is not to avoid taxes or the securities laws. No governmental party in interest has requested the denial of confirmation on any of the foregoing grounds. Accordingly, the Plan satisfies section 1129(d).

## CONCLUSION

For the reasons stated above, the Plan meets the requirements of Bankruptcy Code section 1191 and should be confirmed. Debtor requests the Court to issue an order confirming the Plan.

Dated: May 28, 2023     AKERMAN LLP

          By: */S Evelina Gentry*
            Evelina Gentry
            Mark S. Lichtenstein (Admitted *Pro Hac Vice)*

            *Attorneys for Debtor and Debtor-in-Possession FJC Management, Inc*

19      CASE NO. 23-40085 (WJL)
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS**

Case: 23-40085  Doc# 136  Filed: 05/29/23  Entered: 05/29/23 09:07:15  Page 26 of 36

70588363;15

**AKERMAN, LLP**
EVELINA GENTRY (SBN 296796)
evelina.gentry@akerman.com
601 W. Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

MARK S. LICHTENSTEIN
(*Admitted Pro Hac Vice* )
mark.lichtenstein@akerman.com
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
*Attorneys for FJC Management Inc.*
*Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA- OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>FJC MANAGEMENT INC.,<br><br>    Debtor and Debtor-in-Possession. | Case No. 23-40085(WJL)<br><br>Chapter 11<br><br>Subchapter V<br><br>**DECLARATION OF PRAVESH CHOPRA IN SUPPORT OF PLAN CONFIRMATION**<br><br>Judge: Hon. William J. Lafferty<br>Date: May 31, 2023<br>Time: 10:30 a.m. (Pacific Time)<br>Location: U.S. Bankruptcy Court<br>Courtroom 220, 1300 Clay Street, 2nd Floor,<br>Oakland, CA 94612 |

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

I, Pravesh Chopra, declare:

1.      I am the Chief Executive Officer of FJC Management Inc., a Nevada corporation (the "Debtor" or "FJC"). I know of my own personal knowledge each of the facts set forth in this Declaration, except only those facts set forth on information and belief and, as to those facts, I am informed and believe them to be true. Where facts are stated upon information and belief, I know them to be true of my own personal knowledge or based upon my review of Debtor's books, records, files and procedures. If called upon to testify in this action as to the matters set forth herein, I could and would testify competently thereto.

2.      This declaration is submitted in support of the: *Debtor's Memorandum of Points and Authority in Support of Debtor's Plan of Reorganization for Small Business Under Chapter 11 Dated April 25, 2023* (the "Memorandum").

3.      I have reviewed the foregoing documents, am familiar with the form and substance of their contents, and am authorized to make this supporting declaration on behalf of Debtor. I give capitalized terms not otherwise defined herein the same meanings ascribed to them in the Memorandum.

4.      I was intimately involved with the preparation of the Plan of Reorganization for Small Business Under Chapter 11 and Plan Complement, as Docket No. 109 (the "Plan")  and all of the supporting data and documents filed in support of the Plan. I am intimately familiar with the terms of the Plan, Debtor's books and records, and Debtor's current and projected financials.

5.      I am advised by Debtor's general bankruptcy counsel, Mark Lichtenstein of Akerman LLP, that all Claimants entitled to vote with respect to the Plan voted in favor of the Plan such that the confirmation of the Plan will be deemed consensual.   The Debtor determined to treat the Priority Tax Claims in accordance with the applicable statute and therefore such claimants are no longer classified as an impaired voting class entitled to vote.   This modification, plus the affirmative votes of all creditors in the two impaired classes in the Plan, has paved the way for this to be a consensual Plan

Case: 23-40085    Doc# 135    Filed: 07/24/23    Entered: 07/24/23 09:50:47    Page 28 of
36

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

6. Debtor operates 4 fast casual restaurants known as "Buffalo Wild Wings" in California, under the Buffalo Wild Wings franchise. These four restaurants are located in Livermore, California, Dublin, California, Fairfield, California, and Vacaville, California. Debtor previously operated a restaurant in San Ramon, California. Debtor's principal business office is located at 2150 Portola Avenue, Livermore, California.

7. On January 25, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Debtor continues to operate its business as debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. Debtor filed for protection under Sub-chapter V to reorganize its debts and obligations so that, going forward, Debtor may continue to operate as a going concern and preserve cash value for Debtor's stakeholders, including all creditors and 120 employees. Since the Petition Date, the Debtor has worked closely with Mark Sharf, the Sub-Chapter V Trustee, and has engaged in extensive negotiations with its creditors with goal of obtaining confirmation of a consensual plan.

8. On April 25, 2023, I authorized and directed Debtor's bankruptcy counsel to file the Plan. Thereafter, on May 25, 2023, I authorized Debtor's counsel to file the Plan Supplement (I) Resolving Informal Plan Objections by Market Place at San Ramon, LLC and (II) Addressing Lease Assumptions, Including Certain Cure Amounts (the "Plan Supplement"). *See* Doc. #132.

9. The Plan Supplement resolves informal objections to confirmation by the San Ramon Landlord. On March 9, 2023, the San Ramon Landlord asserted a bifurcated claim for past rent totaling $680,742.71 as a secured claim and $398,146.79 as an unsecured claim [Proof of Claim No. 9-1] (the "San Ramon Claim"). On May 1, 2023, Debtor objected to the San Ramon Claim [Docket No. 110] (the "Claim Objection") asserting that the San Ramon Claim is wholly unsecured, as the San Ramon Landlord never obtained a final judgment in the State Court Action. As set forth in the Plan Supplement, he Debtor has reached settlement with the San Ramon Landlord. As part of the settlement, Ishwinder Judge and I have agreed to acquire the San Ramon Claim for $125,000.

10. Additionally, the Plan Supplement outlines certain lease assumptions and cure amounts. First, Debtor seeks to assume the non-residential real property lease with Star-West Solano, LLC, the landlord of the Fairfield location, as amended by the First Amendment, and as further

Case: 23-40085    Doc# 138    Filed: 06/29/23    Entered: 06/29/23 09:47:17    Page 29 of 36

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

amended by the e-mail agreement of the parties dated April 21, 2023, pursuant to a cure payment of $10,000. Second, the assumption of the non-residential real property lease with Stanforth Holding Company a/k/a S&V, LLC, the landlord of the Dublin location, which will require a cure payment of $59,723.14.

11.     Thus, in the aggregate, Ishwinder and I have agreed to personally pay approximately $209,770 in combination of cure and rejection costs, payments to settle with the San Ramon Landlord, and the projected costs of the Sub-Chapter V Trustee.  This is in addition to the $116,000 contributed by the Ishwinder Judge and I to satisfy certain payroll obligations both pre- and post-petition.

12.     The Debtor has also engaged in extensive good faith negotiations aimed at allowing for a prompt payment of settlement of its other larger unsecured claim.   On April 5, 2023, Elizabeth Bilovocky, individually and on behalf of all other similarly situated, filed a  Proof of Claim in the amount of $399,000 on the basis of "settlement of class action of wage and hour lawsuit in Alameda County" (the "Wage and Hour Claim")[Claim No. 18-1].  While we are hopeful that the parties will be able to reach a settlement that is beneficial to the estate  there is no assurance that a settlement will be reached.

13.     Since filing its original projections, the Debtor has had an opportunity to update its projections to account for the closure of its Livermore location on June 30, 2023, the associated costs thereof, payment of Priority Tax Claims, with interest, and certain pressing capital expenses learned of after the filing of the Plan with respect to the Fairfield location.  Attached hereto as **Exhibit A** are Debtor's updated projections (the "Revised Projections").

14.     Under Debtor's Revised Projections, the Debtor's net disposable income for the Plan period has increased from $762,227 to $778, 268. Under the Revised Projections, general unsecured claimants (the "GUCs"), shall receive a pro rata distribution of $209,770, which is an increase of $16,041.

15.     Here, it is beyond any legitimate dispute that the GUCs will fare far better under the Plan than in a chapter 7 liquidation.  I am very confident that the Debtor's financial projections adequately factor Debtor's historical operations, income and expenses, combined with reasonable assumptions going forward, given the current economic climate and future uncertainties and

Case: 23-40085    Doc# 130    Filed: 07/26/23    Entered: 07/26/23 20:02:17    Page 30 of
36

likelihoods specific to Debtor's business and the restaurant industry. I believe it is highly unlikely that the reorganized Debtor would need to liquidate or seek bankruptcy protection after confirmation of the Plan.

16.    Post-confirmation, Debtor intends to also use its available cash on hand to make those payments due to creditors on the effective date of the Plan as set forth in the Plan. Thereafter, Debtor intends to continue in the ordinary course to work to maximize profitability and ensure that it meets the financial projections set forth in the Plan.

17.    Having reviewed the Claims asserted against Debtor, and the Revised Projections, here, GUCs, a pro rata distribution of $209,770 in projected net disposable income over the course of three years, which will result in an 8-10% recovery by the GUCs. and full payment to Priority Tax Claimants over the course of three years.

18.    Having reviewed Debtor's liquidation analysis, the GUCs and Priority Claimants will fare far better under the Plan than in a liquidation. In a hypothetical liquidation, the Priority Claimants would receive a partial distribution and GUCs would receive nothing.

19.    In a liquidation under Chapter 7, Debtor foresees only $132,500.00 in total gross liquidation proceeds. Administrative fees alone, in liquidation, would amount to approximately $300,000. Thus, under a liquidation analysis, liquidation proceeds will be insufficient to cover all administrative fees; thus, Priority Tax Claimants and GUCs would not receive a distribution. While under the terms of the Plan, administrative fees and Priority Tax Claimants will be paid in full and GUCs receive a distribution of $209,770 in projected net disposable income over the course of three years.

20.    As stated above, I am confident in Debtor's financial projections and forecast as filed in support of the Plan. I also have high confidence in Debtor's management team and staff, and believe that Debtor can operate in a manner that will allow us the Debtor to continue to perform its contractual obligations and to make the required Plan payments.  Ishwinder Judge and I have the requisite personal financial wherewithal to make the payments that we have committed to under the Plan as of the Effective Date and thereafter.

Case: 23-40085    Doc# 138    Filed: 07/29/24    Entered: 07/29/24 08:17    Page 31 of
36

21.     Debtor has the funds to make all required payments necessary to be paid by the Effective Date. Debtor will (1) use available cash on the Effective Date, plus funds infused by the Ishwinder and I, to pay 100% of certain allowed administrative expense claims (although a portion of the administrative claims required to be paid on the Effective Date of the Plan will be funded from a combination of Debtor's cash on hand as of the Effective Date or contributions by Principals and/or paid over time under the Plan from Projected Disposable Income), (2) use Projected Disposable Income to satisfy 100% of all allowed priority tax claims in equal monthly installments over the life of the Plan, including interest, and (3) use Projected Disposable Income to provide distributions to allowed unsecured creditors on a pro rata basis over the three years following the Effective Date of the Plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 28th day of May, 2023.

By: /s/Pravesh Chopra
Pravesh Chopra

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Case: 23-40085    Doc# 130    Filed: 07/28/23    Entered: 07/28/23 15:06:37    Page 32 of
36

# EXHIBIT A

70665313;1

Projections Detailed 2023         **YEAR 1**         **June 2023 - June 2024**

| | Dublin | Fairfield | Livermore | Vacaville | Totals |
|---|---|---|---|---|---|
| Net Sales | 2,935,750 | 1,835,750 | 57,000 | 3,395,750 | 8,224,250 |
| F&B | (763,295) | (477,295) | (14,820) | (882,895) | (2,138,305) |
| Labor | (880,725) | (605,798) | (18,810) | (1,120,598) | (2,625,930) |
| Utilities | (117,430) | (73,430) | (2,280) | (135,830) | (328,970) |
| Non Ingredient | (62,825) | (39,285) | (1,220) | (72,669) | (175,999) |
| Repairs and Maintenance | (98,715) | (96,567) | (29,850) | (107,915) | (333,047) |
| Indirect Costs | (58,715) | (55,073) | (1,710) | (101,873) | (217,370) |
| Rent | (230,184) | (170,000) | (58,950) | (228,468) | (687,602) |
| CAM | (70,884) | - | (10,000) | (19,872) | (100,756) |
| Advertising-BWW | (117,430) | (73,430) | (2,280) | (135,830) | (328,970) |
| Royalty- BWW | (146,788) | (91,788) | (2,850) | (169,788) | (411,213) |
| Real/Personal Property Tax | (21,883) | (15,000) | - | (41,208) | (78,091) |
| Insurance/ Property | (24,766) | (24,766) | (2,100) | (24,766) | (76,398) |
| GA Distributed | (159,966) | (159,966) | | (159,966) | (479,898) |
| Remodel Debt Servie | - | - | - | - | |
| Capex Reserve | - | - | - | - | - |
| Net Income | 182,144 | (46,647) | (87,870) | 194,073 | 241,702 |
| **Priority Claims** | | | | | 43,166 |
| **BWW** | | | | | 50,000 |
| **Akerman** | | | | | 67,000 |
| **Unsecured Claims** | | | | | 81,536 |

Projections Detailed 2024 **YEAR 2** **June 2023 - June 2024**

| | Dublin | Fairfield | Vacaville | Totals |
|---|---|---|---|---|
| Net Sales | 3,090,625 | 1,863,750 | 3,585,125 | 8,539,500 |
| F&B | (834,469) | (521,850) | (932,133) | (2,288,451) |
| Labor | (927,188) | (596,400) | (1,147,240) | (2,670,828) |
| Utilities | (123,625) | (74,550) | (143,405) | (341,580) |
| Non Ingredient | (66,139) | (39,884) | (76,722) | (182,745) |
| Repairs and Maintenance | (116,813) | (92,275) | (71,703) | (280,790) |
| Indirect Costs | (61,813) | (74,550) | (143,405) | (279,768) |
| Rent | (230,184) | (170,000) | (228,468) | (628,652) |
| CAM | (70,884) | - | (19,872) | (90,756) |
| Advertising-BWW | (123,625) | (74,550) | (143,405) | (341,580) |
| Royalty- BWW | (154,531) | (93,188) | (179,256) | (426,975) |
| Real/Personal Property Tax | (21,883) | (15,000) | (41,208) | (78,091) |
| Insurance/ Property | (24,766) | (24,766) | (24,766) | (74,298) |
| GA Distributed | (195,000) | (195,000) | (195,000) | (585,000) |
| | | | | - |
| Remodel Debt Servie | | | - | - |
| | | | | - |
| Capex Reserve | - | - | - | - |
| | | | | - |
| Net Income | 139,706 | (108,263) | 238,543 | 269,986 |
| **Priority Claims** | | | | 43,166 |
| **BWW** | | | | 50,000 |
| **Akerman** | | | | 75,000 |
| **Unsecured Claims** | | | | 101,820 |

| Projections Detailed 2025 | | Year 3 | June 2024 - June 2025 | |
|---|---|---|---|---|
| | Dublin | Fairfield | Vacaville | Totals |
| Net Sales | 3,167,522 | 1,882,388 | 3,674,917 | 8,724,826 |
| F&B | (855,231) | (527,069) | (955,478) | (2,337,778) |
| Labor | (950,256) | (602,364) | (1,175,973) | (2,728,594) |
| Utilities | (126,701) | (75,296) | (146,997) | (348,993) |
| Non Ingredient | (67,785) | (40,283) | (78,643) | (186,711) |
| Repairs and Maintenance | (118,350) | (37,648) | (73,498) | (229,497) |
| Indirect Costs | (63,350) | (75,296) | (146,997) | (285,643) |
| Rent | (230,184) | (170,000) | (228,468) | (628,652) |
| CAM | (70,884) | - | (19,872) | (90,756) |
| Advertising-BWW | (126,701) | (75,296) | (146,997) | (348,993) |
| Royalty- BWW | (158,376) | (94,119) | (183,746) | (436,241) |
| Real/Personal Property Tax | (21,883) | (15,000) | (41,208) | (78,091) |
| Insurance/ Property | (24,766) | (24,766) | (24,766) | (74,298) |
| GA Distributed | (228,000) | (228,000) | (228,000) | (684,000) |
| Remodel Debt Servie | | - | - | - |
| Capex reserve | - | - | - | - |
| Net Income | 125,054 | (82,748) | 224,274 | 266,580 |
| **Priority Claims** | | | | 43,166 |
| **BWW** | | | | 150,000 |
| **Akerman** | | | | 47,000 |
| **Unsecured Claims** | | | | 26,414 |